[Crim. No. 2027.   Third Dist.   Oct. 25, 1948.]

In re JOHN JONES, on Habeas Corpus.

C. K. Curtright for Petitioner.

Fred N. Howser, Attorney General, and Benjamin B. Knight, Deputy Attorney General, for Respondent.

PEEK, J.—By habeas corpus petitioner challenges the proceedings under which he was sentenced to life imprisonment on a charge of murder in the first degree. Although various grounds are alleged as a basis for his petition it appears that only one need be considered, to wit: the failure of the trial court to properly inform him of his constitutional rights. Petitioner's contention in this regard is that he was neither informed of the right nor was he given the opportunity to have the advice of counsel and that he did not waive such right.

The facts disclosed by the meager record before us are that petitioner was arrested on or about June 1, 1924, and on June 3, by a complaint filed in the Justice Court of Oroville Township, was charged with murder in the first degree. During the course of his arrest he was shot twice, once with a revolver or rifle, the bullet passing through his body, and once with a shotgun. A preliminary examination was held on the morning of June 6, and he was held to answer

in the superior court of that county. The minutes of the preliminary hearing state that the petitioner "was present in court without counsel" and that he had "previously been informed of his legal rights by the court." Later on the same morning he was arraigned in the superior court and pleaded guilty to the crime as charged. The pertinent portions of the minutes of the proceedings on arraignment in the superior court state that the "defendant was present without counsel and states that he does not desire counsel," that the clerk read the information and gave a copy to the defendant, that the defendant pleaded guilty to the offense charged, and that he waived time for sentencing. The minutes of the proceedings at the time sentence was pronounced the following day likewise show that the defendant "was present without counsel."

The recent decision of the Supreme Court of this state (*People* v. *Chesser*, 29 Cal.2d 815 [178 P.2d 761]) and of the Supreme Court of the United States (*Von Moltke* v. *Gillies*, 332 U.S. 708 [68 S.Ct. 316, 92 L.Ed. 309]), which have properly and with clarity focused attention upon the duty cast upon our courts to insure and protect the constitutional guarantees afforded those accused of crime (Cal. Const., art. I, § 13, U. S. Const., 6th Amend.), would seem to make unnecessary a detailed statement of the law in regard to its application to the question presented herein. However, counsel for respondent summarily dismisses the question so raised by petitioner with the statement that it is conclusively controlled by the more recent case of *In re Tedford*, 31 Cal.2d 693 [192 P.2d 3].

It is true that in the Tedford case as in the present the docket of the justice court shows that the defendant was "informed of his legal rights" but there the similarity ends. The minutes of the superior court in the Tedford case show that defendant was "instructed as to his rights." In the present case the minutes of the superior court are entirely silent in that regard, simply mentioning that "defendant was present without counsel and states he does not desire counsel." Additionally the opinion in the Tedford case states that the transcript of the proceedings on arraignment and plea showed the defendant therein to have been responsive and fully aware of the nature of the proceedings, which the court concluded afforded a substantial basis for the determination that the waiver of his right to counsel was made with intelligence and full conception of the consequences.

In the present case it appears that at the time of his arraignment and plea the petitioner was an illiterate Negro, 37 years of age, who had only reached the second grade in school, who in fact did not learn to read or write until after his confinement in San Quentin, who was under the physical disability and shock of having been shot twice only a few days prior to his appearance, who was wholly ignorant of court procedure and who was charged with a crime containing various degrees—degrees not easily distinguishable, even to one trained in law, and each of which carried with it a different punishment. Quite obviously this is an entirely different situation than was presented in the Tedford case.

Under such circumstances the rule is, as stated in *People v. Chesser, supra,* that:

"In order for a trial judge to determine whether there has been a competent and intelligent waiver of counsel, he must first ascertain whether the defendant clearly understands the nature and effect of his waiver. In a capital case where the defendant has not had the benefit of advice of counsel, and there is nothing to indicate that he understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted, the trial judge does not sufficiently perform his duty if he merely advises the defendant that he had a right to counsel . . ." (29 Cal.2d 822.) And that "The trial judge should also take into account the education, experience, mental capacity, and conduct of the accused in determining whether his willingness to waive counsel may be due to lack of ability to comprehend his situation." (29 Cal.2d 824.) See, also, *Von Moltke* v. *Gillies, supra,* at page —— [92 L.Ed.].

The propriety of the application of such rule to the facts of the present case is given added emphasis by the words of the trial judge, who, upon sentencing the petitioner, stated: "That there was and does exist a doubt—a very grave doubt as to whether or not this was done premeditatively and with malice aforethought or whether it was some sudden affray."

Hence, if the evidence before the trial court was such as to raise an apparent doubt as to the degree of the offense committed then the petitioner, without the aid of counsel and through ignorance or bewilderment, may well have pleaded guilty to a charge carrying a greater penalty than the law of this state exacts for the actual offense committed. (*Tomkins* v. *State of Missouri,* 323 U.S. 485 [65 S.Ct. 370, 89 L.Ed. 407] ; *People* v. *Chesser, supra.*)

In view of the emphatic enunciation of the rule by the Supreme Court of the United States and of this state, it is most difficult to understand the statement made by counsel for respondent that he is apprehensive of a bad precedent which would be established if the writ prayed for were granted; that it would be a travesty upon justice, and a sad commentary upon our criminal jurisprudence'' if the case were to be retried after the lapse of so many years and that in any event petitioner had "utterly failed to show any reason to justify the extraordinary remedy of habeas corpus.''

Surely preservation of the historical guarantees of the Constitution can never establish a dangerous precedent, and a travesty upon justice under the circumstances of this case could result only from the failure of this court to adhere to such fundamental guarantees. The mere fact that it may be difficult or inconvenient to retry the case after the lapse of so many years cannot justify a denial of the writ to correct the original failure of the trial court in the strict adherence to its mandatory constitutional duty.

Since the judgment is void for the reasons herein set forth, it is set aside and the cause is remanded ·to the trial court for further proceedings. It is further ordered that if petitioner is unable to employ counsel the court shall appoint counsel to defend him and shall permit petitioner to change his plea if he be so advised.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied November 9, 1948, and respondent's petition for a hearing by the Supreme Court was denied November 22, 1948. Shenk, J., and Spence, J., voted for a hearing.