[Crim. No. 10659. In Bank. May 5, 1967.]

In re MORRIS E. SMILEY on Habeas Corpus.

Morris E. Smiley, in pro. per., for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

MOSK, J.—In this proceeding in habeas corpus we are called upon to give meaning and effect to the right to counsel and to a speedy trial in the context of misdemeanor prosecutions in the justice courts.

On July 5, 1965, a complaint was filed in the Justice Court of the Calexico Judicial District, County of Imperial, charging petitioner and his codefendant Miloslavich with a violation of Agricultural Code section 1263, a misdemeanor. That statute forbids any person from dealing in farm products in the capacity of commission merchant, broker, or similar intermediary, without first obtaining a license from the Director of Agriculture. It provides that the applicant for such a license shall furnish certain information relating to his business and "make a showing of character, responsibility and good faith," and shall pay an annual fee of $80 "For filing the application. . . ."[1]

---

[1] In view of our disposition of the case on other grounds, we need not reach petitioner's attack on the constitutionality of this statute.

Although the facts in this connection are not before us, it appears that petitioner and Miloslavich acted as brokers in the sale of two carloads of apples, without being licensed under the foregoing statute. On October 22, 1965, each defendant was found guilty and was sentenced to serve one year in county jail and to pay a fine of $550 or serve an additional 110 days in lieu thereof. (Agr. Code, § 1273, subd. (1); Pen. Code, § 1205.) Miloslavich's sentence was suspended and probation was granted, and he paid his fine forthwith. As to petitioner, however, only one month of the sentence was suspended, and commitment issued. No appeal was taken.

In February 1966 petitioner applied to this court for a writ of habeas corpus on the grounds, principally, that he had not been advised of his right to have court-appointed counsel because of indigency or of his right to a speedy trial under Penal Code section 1382, and did not waive either right. We issued an order to show cause returnable before the Superior Court of Imperial County, and ordered petitioner released on his own recognizance pending final disposition of the matter. That court held a hearing and on June 8, 1966, found that petitioner had been advised of his rights to an attorney and to a speedy trial, and that he had waived time and a jury trial and was not an indigent person. The writ of habeas corpus was denied, and petitioner was remanded to the custody of the sheriff to serve the balance of his sentence.

Petitioner then applied for habeas corpus to the federal district court in San Diego. On August 5, 1966, that court ordered petitioner released on his own recognizance pending a hearing on the merits. On November 2, 1966, the district court ruled that petitioner had not exhausted his state remedies, and denied the application without prejudice, but ordered that "provided petitioner files a petition for a writ of habeas corpus with the Supreme Court of the State of California within 30 days from date hereof, he shall remain at liberty pending disposition thereof by the Supreme Court." Accordingly, on December 2, 1966, petitioner again applied to this court for habeas corpus, alleging the same grounds as he raised in his first petition, and we issued a second order to show cause.

*Standing to Petition for Habeas Corpus*

In his return, respondent preliminarily questions whether the remedy of habeas corpus should be available to one who,

like petitioner, is currently at liberty on his own recognizance.[2] While the point does not appear to have been decided with respect to this particular method of release, the guiding principles are clear. It is settled that "the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody" (*Jones* v. *Cunningham* (1963) 371 U.S. 236, 239 [9 L.Ed.2d 285, 83 S.Ct. 373, 92 A.L.R.2d 675]), but has been invoked to relieve a wide variety of "other restraints on a man's liberty" (*id.* at pp. 238-240, 16 L.Ed.2d at pp. 288-289). Thus habeas corpus is available to one who has been released on parole (*Jones* v. *Cunningham, supra*; *In re Jones* (1962) 57 Cal.2d 860, 861, fn. 1 [22 Cal.Rptr. 478, 372 P.2d 310], and cases cited) or on bail (*In re Petersen* (1958) 51 Cal.2d 177, 181-182 [331 P.2d 24, 77 A.L.R.2d 1291]). In the latter case we reasoned that the petitioner was "constructively in custody and subject to restraint since the primary purpose of bail, whether before or after conviction, is practical assurance that he will attend upon the court when his presence is required. [Citation.] Moreover, this court may admit a petitioner to bail pending determination of habeas corpus proceedings (Pen. Code, § 1476), and it would be unreasonable to hold that we lack jurisdiction to issue the writ merely because another court has released him on bail after the filing of his petition.''

This reasoning applies with equal force to one who has been released on his own recognizance. Although the statutory authorization for such a release was not enacted until 1959 (Pen. Code, §§ 1318-1319.6, Stats. 1959, ch. 1340, § 1), it codified a practice that had long obtained in our courts (see, e.g., *Ex parte Duncan* (1879) 54 Cal. 75, 78; Gustafson, *Bail in California* (1956) 44 Cal.L.Rev. 815, 826-827). The 1959 legislation may also be viewed as part of a nationwide movement to liberalize the methods and conditions of pretrial release. The movement was given impetus by the Manhattan Bail Project in 1961, and has manifested itself thereafter in numerous conferences, pilot programs, legislative efforts, and amendments to rules of court.[3] From all indications these

---

[2] We interpret the order of the federal district court that petitioner "remain" at liberty to simply extend the previous conditions of his release, i.e., on recognizance.

[3] A the federal level, for example, the year 1966 alone saw the enactment by Congress of the Bail Reform Act of 1966, Public Law 89-465, and the District of Columbia Bail Agency Act, Public Law 89-519, and the adoption by the United States Supreme Court of corresponding amendments to rule 46 of the Federal Rules of Criminal Procedure. See

reforms appear to be highly promising, and the use of release on recognizance and similar devices may be expected to increase.

As this procedure is therefore simply an alternative to bail in appropriate cases, it should be governed by the *Petersen* rule unless distinguishing features appear. ■ Here, as with bail, the "primary purpose" of the device "is practical assurance that [the defendant] will attend upon the court when his presence is required." (*In re Petersen, supra,* 51 Cal.2d at p. 181.) It cannot be argued that release on recognizance lacks meaningful sanctions: the statute requires the defendant to file an agreement in writing promising to appear at all times and places ordered and waiving extradition if he fails to do so and is apprehended outside California (Pen. Code, § 1318.4), and makes wilful failure to appear punishable as an independent crime (Pen. Code, §§ 1319.4, 1319.6). Such an individual is not free to go where he will, but is subject to "restraints not shared by the public generally." (*Jones* v. *Cunningham, supra,* 371 U.S. at p. 240, 9 L.Ed.2d at p. 289.) He is therefore under sufficient constructive custody to permit him to invoke the writ. Indeed, the Legislature implied as much when it provided (Pen. Code, § 1318.6) that a defendant released on his own recognizance may be required nevertheless to give bail or other security and "The court may order that the defendant be committed to *actual* custody unless he gives such bail or gives such other security." (Italics added.)

Moreover, just as we have the power to admit a petitioner to bail pending determination of habeas corpus proceedings (see, e.g., *In re Johnson* (1965) 62 Cal.2d 325, 328 [42 Cal. Rptr. 228, 398 P.2d 420]; *In re Osslo* (1958) 51 Cal.2d 371, 376, fns. 3, 4 [334 P.2d 1]), so we also have the power to release him on his own recognizance (Pen. Code, §§ 1476, 1318). As in *Petersen,* it would be unreasonable to hold that

generally, The Challenge of Crime in a Free Society: Report by the President's Commission on Law Enforcement and Administration of Justice (1967), pp. 130-133; Bail Reform in the Nation's Capital: Final Report of the D. C. Bail Project (1966); Bail and Summons: 1965, Proceedings of Institute on the Operation of Pretrial Release Projects and Justice Conference on Bail and Remands in Custody (1966) National Conference on Bail and Criminal Justice: Proceedings and Interim Report (1965); Goldfarb, Ransom (1965), ch. V; American Law Institute, Model Code of Pre-Arraignment Procedure (Tent. Draft No. 1, 1966), pp. 60-61, 205.

we lack jurisdiction to issue the writ merely because another court has done what we had the power to do.[4]

Respondent recognizes that the rule he advocates "merely postpones relief for a short period of time and dwindles into a procedural technicality," but contends that for assertedly practical reasons we should not cross the "clear, plain line" of custody. He argues that "The lack of a clearly defined respondent engenders confusion among public agencies as to who bears the burden of giving the government a defense." No difficulty appears in this connection so great as to outweigh the individual's interest in untrammeled liberty. In each case of this type the petitioner will already have been committed to jail or prison, and the respondent will be the officer to whose actual, physical custody the petitioner will be remanded if the courts should deny him relief, regardless of who the particular holder of that office happens to be at the time. Any remaining jurisdictional problems can surely be solved by the interested governmental agencies.[5]

We conclude that habeas corpus is an appropriate remedy in this case even though petitioner is at liberty on his own recognizance. The cases of *In re Gow* (1903) 139 Cal. 242 [73 P. 145], *In re Stanridge* (1937) 23 Cal.App.2d 95, 98 [72 P.2d 162], *In re Henderson* (1933) 133 Cal.App. 191, 192 [23 P.2d 780], and *In re Bocci* (1927) 84 Cal.App. 269 [257 P.2d 888], are disapproved insofar as they are inconsistent with this conclusion.

### Right to Counsel

Under article I, section 13, of the California Constitution, there can be no doubt that the fundamental right to the assistance of counsel is guaranteed to all persons, such as the present petitioner, charged with a misdemeanor in a justice or other inferior court. (E.g., *In re McCoy* (1948) 32 Cal.2d 73, 76 [194 P.2d 531] [city police court]; *In re Jingles* (1946) 27 Cal.2d 496, 498 [165 P.2d 12] [same]; see generally, *In re Johnson* (1965) *supra,* 62 Cal.2d 325, 329.)[6] This

---

. [4]Indeed, it was on his own recognizance that we released this petitioner when he first applied to us for relief in this proceeding.

[5]Nor is there any foundation for respondent's complaint that our entertaining this petition will somehow have an adverse effect on federal-state relations. The federal court impliedly invited such action on our part, and has in no sense retained jurisdiction over the case. We are not concerned with the power of the federal court, which respondent "doubts," to issue an order affecting petitioner's custody at the time it denied his application for habeas corpus without prejudice.

[6]We note that after our decision in *Johnson* the Legislature amended Gov. Code, § 27706, to require the public defender, in those counties

guarantee, of course, is meaningless unless the defendant is made fully aware of it: not only must he be advised of his right to counsel, he must also be advised that the court will appoint an attorney to represent him if he is unable to afford one. Applicable here is the reasoning of the United States Supreme Court on the importance of the latter advice in the context of in-custody interrogations: ''In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation— the knowledge that he too has a right to have counsel present. As with the warnings of the right to remain silent and of the general right to counsel, only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it. [Fns. omitted.] '' (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 473 [16 L.Ed.2d 694, 723, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

Implementing these constitutional requirements are several specific statutory commands. Thus when a defendant is charged with a public offense and brought before a magistrate, the latter must immediately ask him if he desires the aid of counsel and ''If the defendant desires and is unable to employ counsel, the court must assign counsel to defend him.'' (Pen. Code, § 859.)[7] Again, if the defendant is unrepresented at the time of arraignment the court must ask him if he desires the aid of counsel and ''If he desires and is unable to employ counsel, the court must assign counsel to defend him.'' (Pen. Code, § 987.) As we observed in *In re Johnson* (1965) *supra,* 62 Cal.2d 325, 330, ''Each of these statutory requirements, moreover, must be observed in such a manner as to promote rather than defeat the constitutional

having such an officer, to represent indigent defendants at all stages of the proceedings in the municipal or justice courts, as well as in the superior courts. (Stats. 1965, ch. 324, p. 1434; see also Pen. Code, § 987a.)

[7]Despite language apparently limiting its application to felonies, we have explained that § 859 should be deemed to govern misdemeanor cases as well. (*In re Johnson* (1965) *supra,* 62 Cal.2d 325, 329, fn. 2.)

intent, for 'the very purpose of the duty thus enjoined upon the court to advise an accused is to preserve to him a right which the Constitution has conferred upon him.' [Citation.]"

Petitioner alleges he was indigent at the time of trial, was not advised he could have an attorney appointed by the court, and did not waive his right to such counsel. The record supports these allegations.

The trial took place in the Justice Court of the Calexico Judicial District. ■■ The official docket entries of that court show that petitioner appeared in propria persona, was "duly arraigned," pleaded not guilty, and thereafter defended himself without benefit of counsel. There is no entry specifically reflecting that petitioner was given the necessary advice as to his constitutional and statutory rights.

It is true that in *In re Woods* (1966) 64 Cal.2d 3, 7 [48 Cal.Rptr. 689, 409 P.2d 913], we held that a docket entry reciting that the defendant was "duly arraigned" in a jurisdiction (Utah) having a statute identical to our Penal Code section 987, *supra,* required us to give effect to the presumption that "official duty was performed" and "the principle that every reasonable intendment must be made in favor of judgments collaterally attacked," by "assuming" that the defendant was properly advised of his rights to counsel. *Woods,* however, is distinguishable. In a proceeding challenging an adjudication of habitual criminality, we were there required to determine the validity of judgments of conviction rendered in another state more than 20 years earlier, "long before the right sought to be enforced was judicially articulated"; in such circumstances we recognized that "we cannot reasonably insist that the record of those convictions reflect impossible prescience." (*Id.* at p. 9.) But the arraignment in the present case took place more than six months *after* our decision in *Johnson* was published. In that opinion (62 Cal.2d at pp. 330-331) we made it clear we were not satisfied to rest a finding that the defendant was properly advised solely on a recital in the minutes that he had been "duly arraigned"; we stated, rather, that since the rights involved were of constitutional dimension we would " 'look to the entire record to ascertain the meaning of the entry,' " and accordingly we considered evidence of the custom of the arraigning judge "for the purpose of explaining or filling [the] gaps in the official record." At least since *Johnson,* therefore, it has not required "impossible prescience" for our

trial courts to know that an adequate record on the question of advising the defendant of his right to counsel means more than simply a recital that he was "duly arraigned." In view of the importance of the constitutional and statutory guarantees in issue, it does not appear too great a burden on the trial judges or clerks under their direction to require minute or docket entries specifically listing the rights of which the defendant is actually advised.[8] As the United States Supreme Court said in a related context, "No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right." (*Miranda* v. *Arizona* (1966) *supra,* 384 U.S. 436, 471-472 [16 L.Ed.2d 694, 722, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

Here, to "fill the gap in the record" the arraignment judge was called as a witness at the superior court hearing. He testified that before taking petitioner's plea he advised him of his "legal rights," and that petitioner replied he understood what he had been told. On the question of the right to counsel, however, the judge's advice was limited to the statement, "You are entitled to be represented by an attorney at all stages of these proceedings." Such an admonition in no way apprises a defendant of his further right to be furnished an attorney if he is unable to afford one, advice which is essential to a meaningful decision by the defendant as to whether to demand or waive his right to counsel. Indeed, the judge further testified that he inquired of petitioner "if he planned to retain an attorney." Such a question, of course, tends to reinforce an uninformed indigent's belief that he can have an attorney only at his own expense.

Respondent contends that petitioner may not be heard to complain of the failure to advise him of his right to court-appointed counsel because, it is asserted, he was not in fact indigent and hence had no right to such appointment of counsel in any event. Reliance is placed on *In re Johnson* (1965) 237 Cal.App.2d 463, 467 [47 Cal.Rptr. 17], in which

---

[8]Such entries, of course, must be prepared for the particular case before the court; the requirement will not be satisfied by the use of minute forms containing printed recitals of this advice. (Cf. *People* v. *Succop* (1966) 65 Cal.2d 483, 484, fn. 1 [55 Cal.Rptr. 397, 421 P.2d 405]; *In re Raner* (1963) 59 Cal.2d 635, 642, fn. 9 [30 Cal.Rptr. 814, 381 P.2d 638].)

it was observed that if one who complains of a failure to be advised of his right to court-appointed counsel is entitled to redress ''it is because he was deprived of the right to such counsel and not simply because he was inadequately advised.'' The court held that on habeas corpus it is therefore incumbent on such a petitioner ''to allege or show that he was without ability to employ counsel since it must be made to appear that the right exists before there can be any claim of deprivation.''

The foregoing rule is derived from general principles of the law of habeas corpus, which require petitioners claiming violations of constitutional rights to allege facts showing that such violations have affected them individually. (*In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305], and cases cited.) In the present context, however, we must also bear in mind the United States Supreme Court admonition that ''While a warning that the indigent may have counsel appointed need not be given to the person who is known to have an attorney or is known to have ample funds to secure one, the expedient of giving a warning is too simple and the rights involved too important to engage in *ex post facto* inquiries into financial ability when there is any doubt at all on that score.'' (*Miranda* v. *Arizona* (1966) *supra,* 384 U.S. 436, 473, fn. 43 [16 L.Ed.2d 694, 723, 86 S.Ct. 1602, 10 A.L.R.3d 974].) Here, considerable doubt developed as to petitioner's financial ability, and the major portion of the superior court hearing was devoted to exploring that issue.

The subject was first raised at an inquiry preliminary to the hearing on the merits of the habeas corpus petition. The district attorney, by examination of petitioner, sought to establish petitioner's ownership of a lease on certain property in Arizona and his right to reimbursement of a $1,000 cash bond. The nature and value of petitioner's interest in these assets remained unclear at the end of the examination. What is clear, however, is that the inquiry was wholly directed to petitioner's ability to hire counsel to represent him at the superior court hearing itself, and hence is irrelevant to the question whether he had such ability at the time of his trial.

The latter question was investigated at the hearing on the merits. An agent of the California Department of Agriculture testified that the $1,000 cash was security provided by petitioner some 17 years earlier for a performance bond he had been required to file when he was previously licensed as a produce dealer; as that license had expired, petitioner was

entitled to reimbursement of his collateral. Petitioner testified, however, that at the time of his arrest and trial he did not know of his right to such reimbursement, and no evidence was introduced to the contrary. The state agent described a conversation with petitioner prior to his arrest, in which the question of the money was raised; but in that conversation petitioner simply claimed the state had $1,000 of his money and the agent replied that it did not. The judge who had presided at petitioner's trial, Hugh L. Keating, testified that he had received a letter from the surety company stating it was holding the $1,000 and would reimburse petitioner upon his furnishing satisfactory identification, and that he promptly informed petitioner of the contents of the letter. But these events took place subsequent to the time in issue: petitioner's trial was on October 21, 1965, and the letter from the surety company is dated November 10, 1965. It follows that neither Judge Keating's testimony nor that of the state agent establishes that petitioner had the knowledge or the ability to obtain the $1,000 at the time of his trial.

In any event, it affirmatively appears from the record of the superior court hearing that petitioner was indigent within the meaning here under discussion. In *Hill* v. *Superior Court* (1956) 46 Cal.2d 169, 174 [293 P.2d 10], we observed that ''if the accused had been possessed of $1,000 in cash and *had no other obligations,* he could not have been deemed to be, in any fair sense of the term, a person 'unable to employ counsel' (Pen. Code, § 987).'' (Italics added.) By contrast, petitioner testified that ''Three years ago I was—owed $18,000.00; as of today it's a little less than ten thousand, and I have no money other than perhaps this bond.'' This evidence stands uncontradicted.

The extent of petitioner's debts is relevant because a determination of indigency is to be made on the basis of as complete a financial picture as it is feasible to obtain in the circumstances. We recognize that in trial courts with heavy case loads the inquiry will normally be a cursory one, and that most judges will accept a defendant's assessment of his ability to retain his own counsel. (See Notes, 76 Harv.L.Rev. 579, 585-588, 13 Stan.L.Rev. 522, 546-547.) But in those cases in which a claim of indigency is challenged, as here, fairness requires that consideration be given not only to the defendant's assets but also to such countervailing factors as the nature and extent of his outstanding debts, the encumbrances on his home or car, the number and age of his dependents,

and any preferred charges such as child support or alimony. (See *People* v. *Ferry* (1965) 237 Cal.App.2d 880, 887 [47 Cal.Rptr. 324]; *Williams* v. *Superior Court* (1964) 226 Cal.App.2d 666, 672-673 [38 Cal.Rptr. 291].) Even after such a balancing of accounts is made, however, it remains impractical for an appellate court to prescribe a specific maximum amount of net liquid assets a defendant will be allowed to possess and still claim indigency for the purpose of court appointment of counsel, for the cost of legal representation will vary according to the standards of the community, the complexity of the case, and the expenses necessary for defense. It may well be that no more precise definition can or should be formulated than that derived from a recent statistical study, i.e., ''in essence the test applied is whether or not a private attorney would be interested in representing the defendant in his present economic circumstances.'' (Note, 13 Stan.L.Rev. 522, 546).

From the foregoing considerations it is clear that ''this situation is one which should be handled by the judges who have charge of the courts where preliminary examinations and trials are held. Trial judges are in the best possible position administratively to decide the question involved, because the facts involved in each case must determine the answer.'' (*Williams* v. *Superior Court* (1964) *supra*, 226 Cal.App.2d 666, 672.) In the case at bar, however, there is no showing that prior to petitioner's trial such an inquiry was made or such discretion was exercised. Petitioner has sustained his burden of alleging in his application for habeas corpus that he was indigent at the time of trial. In traversing this allegation, respondent relies on the evidence adduced at the superior court hearing; but as we have seen, most of that evidence is irrelevant to this issue and the remainder tends to support petitioner's claim of indigency. We conclude that petitioner was denied his right to be advised he could have a court-appointed attorney to defend him.

Nor is there any showing that petitioner effectively waived his right to such counsel. Petitioner alleges he made no such waiver, and the docket entries of the arraignment and trial are devoid of any reference to the matter. Indeed, respondent frankly concedes that ''The minutes do not show that petitioner waived counsel and there is no evidence that petitioner said he was waiving a lawyer.''

*In re Johnson* (1965) *supra*, 62 Cal.2d 325, is controlling on this issue. There, a defendant charged with a group of misde-

meanor traffic offenses was advised of his right to counsel, including the right to have the public defender appointed if he could not afford a private attorney; he nevertheless remained unrepresented at arraignment, when he pleaded guilty, and at sentencing, and the record was devoid of any statement by him expressly waiving his right to counsel. It was urged that by failing to request an attorney and by pleading guilty as charged the defendant "impliedly" waived counsel. We observed, however, that the right to be furnished counsel does not depend on a request, and that "A course of conduct that outwardly implies an intent to waive will nevertheless be held insufficient unless it appears that such a 'waiver' was intelligently and understandingly made. Thus purported waivers of the right to counsel have been set aside by the courts, in the circumstances there shown, even where the defendant had declined an offer of counsel and had entered a plea of guilty [citations], or where the defendant had discharged his counsel before trial [citation]. Where, as here, petitioner neither expressly declined nor discharged counsel but merely responded 'Guilty' to the court's question of how he pleaded, there is nothing in the record which remotely intimates that he thereby made an *intelligent and understanding* waiver of his constitutional right to counsel." (*Id.* at p. 334.) We concluded that the proceedings were therefore constitutionally defective, quoting the now familiar admonition of *Carnley* v. *Cochran* (1962) 369 U.S. 506, 515-516 [8 L.Ed.2d 70, 77, 82 S.Ct. 884], that "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

Respondent seeks to distinguish the case at bar from *Johnson* on three grounds, none of which is persuasive. First, it is stressed that the punishment here meted out was only half as severe as that imposed in *Johnson*.[9] ■ It is true that we gave weight in *Johnson* to the "potential seriousness of the charges" (62 Cal.2d at p. 337) as evidenced by the punishment imposed; and we adhere to the view there expressed that in cases involving serious misdemeanor charges the courts

---

[9] In *Johnson,* the defendant was sentenced to serve five consecutive sentences of 180 days each in jail; in the present case, petitioner was sentenced to serve one year, with one month suspended, and to pay a fine of $550 or serve an additional 110 days in lieu thereof. It does not appear that petitioner has been able to pay his fine.

must make a reasonable and timely effort to determine whether the defendant understands his predicament and is "capable of representing himself effectively at all stages of the proceedings." But the "severity" of a punishment is a relative term. According to petitioner's allegations, not denied by respondent, he is 62 years of age and in ill health; we cannot say it is significantly less "severe" to impose an effective sentence of 445 days in jail on a man in his sixties for selling two loads of apples without a license, than to sentence a young scofflaw to 900 days for repeated violations of the Vehicle Code.[10]

Second, respondent emphasizes that the trial in the case at bar took place in a justice court, rather than a municipal court as in *Johnson*, and that in justice courts there ordinarily is no reporter present to transcribe the oral proceedings. But we have as yet imposed no such requirement. Rather, we recognize, as we did in related context in *Johnson* (62 Cal.2d at p. 336), that "the typically crowded arraignment calendars of our courts pose urgent problems in the administration of justice in California. This is particularly true of those courts in large municipalities which are called upon to deal with an unending stream of traffic violations, drunk cases, vagrancies, and similar petty offenses. While there can be no impairment of the fundamental constitutional rights of any defendant, however minor his crime, in certain situations there may be a choice of valid ways to implement these rights. Where such is the case—and constitutional rights are respected— the convenience of the parties and the court should be given considerable weight." As stated above, docket entries listing the rights of which a defendant has actually been informed may constitute an adequate record of that advice; by the same token, we have no difficulty in conceiving of entries which could satisfactorily reflect a knowing and intelligent waiver of those rights by the defendant. The making of such entries does not constitute a significant additional burden on the justice courts, as they are required in any event to keep a detailed docket of the essential history of every case that comes before them. (Gov. Code, §§ 71614-71616; Pen. Code, § 1428.)

---

[10]There is no merit in respondent's further argument that "at the time petitioner was allowed to proceed to trial without counsel the seriousness of the matter probably did not appear to the trial judge." The crime with which petitioner was charged carried a maximum penalty of one year in jail or a fine of $1,000 or both (Agr. Code, § 1273, subd. (1)), which is exactly double the maximum general punishment for misdemeanors (Pen. Code, § 19).

Third, respondent considers it "a critical factor" that the present case went to trial and that petitioner's codefendant, Miloslavich, was represented at all times by an attorney, apparently privately retained. It is argued that "in the usual case the presence of a codefendant's lawyer will be of immense value to the defendant appearing without counsel." Whether or not this is true, of course, must depend on the facts of the particular case; when two defendants are charged with the same offense, as here, it is equally possible that it will be in the interest of each to shift the blame to the other, in which event a codefendant's counsel would be of little or no benefit to an unrepresented defendant. In his return, respondent urges "there is nothing to show such circumstances are present here"; but the danger of this kind of speculation is forcefully demonstrated by a letter from Miloslavich's former attorney, furnished to us with commendable fairness by respondent, which shows the fact to have been otherwise.[11] ▇▇▇ It seems obvious that as the "value" of a codefendant's attorney cannot be fully assessed until the trial is over, the mere fact of his presence is irrelevant to the question whether the unrepresented defendant effectively waived counsel at the outset of the same proceedings.

There is no merit in respondent's contention that this case falls within the rule of *In re Woods* (1966) *supra,* 64 Cal.2d 3, 9-11, requiring an evidentiary hearing to determine whether as a matter of fact petitioner "impliedly" waived his right to counsel by going to trial unrepresented.[12] As explained at length hereinabove, *Woods* dealt with the validity of prior

---

[11]In that letter Mobley M. Milam, now Chief Assistant United States Attorney for the Southern District of California, explains: "I represented Miloslavich in the Justice Court in Calexico. I never represented Smiley and in fact never talked to him (Smiley) except for a few moments at the courthouse the day of the trial. I never made any representations or intimations to anyone that I represented or would represent Smiley. In fact, from all my information, the interests of Smiley and Miloslavich conflicted and I couldn't represent both."

In his answer to the return, petitioner informs us that at the trial Mr. Milam took the position that his client was not culpable because it was petitioner who had in fact solicited the sale of the apples; petitioner asserts that the trial judge was impressed by this argument, and we note that although both men were convicted of the same offense, the entire jail sentence of Mr. Milam's client was suspended.

[12]Such a hearing has not yet been held in this case. The superior court took no evidence and made no finding on the issue of waiver, presumably because it was convinced petitioner was not indigent and hence had no right to court-appointed counsel in any event. Respondent asks us to infer a finding of implied waiver from the court's denial of the petition, but where constitutional rights are involved we will not pile inference upon inference to reach this result.

convictions rather than the judgment under which the petitioner was currently incarcerated, and we recognized that we could not reasonably require the records of those convictions to reflect "impossible prescience." Here, by contrast, we are not concerned with prior convictions. The arraignment and trial in the present case took place after *Johnson,* and in that decision we made it clear that a judgment under which an indigent defendant is confined is constitutionally defective unless the record affirmatively shows that the failure to provide him with counsel at trial was the result of a knowing and intelligent waiver on his part. Such a showing, we said, "is crucial." (62 Cal.2d at p. 334.) It follows, just as with the requirement of advising a defendant of his right to counsel, that since *Johnson* our trial courts have not needed "impossible prescience" to know that if the defendant makes an effective waiver of that right, the record must so show. There is no reason why at this late date we should tolerate silent records on the question of waiver of counsel, or permit the People to undertake belated speculations as to the defendant's knowledge in an effort to justify a finding of "implied" waiver in such cases. As we explained in *Woods* (64 Cal.2d at p. 9), "This insistence on an adequate record manifests our continuing concern that facts bearing on procedural rights constitutionally guaranteed be fully presented to the appellate courts, and it further evidences our conviction that such rights will be more effectively secured to each person through such explicit procedures."[13]

---

[13]The pitfalls of a search for "implied" waiver in the light of hindsight are well illustrated here. As evidence of an asserted knowing and intelligent waiver, respondent relies on the circumstance that petitioner is said to have told the arraignment judge he understood the rights that had been explained to him; as pointed out above, however, the right to have court-appointed counsel was not among those mentioned. Respondent also emphasizes as "conclusive" the fact that petitioner's codefendant was represented by an attorney throughout the trial, but we noted earlier that this circumstance is irrelevant and in the present case may have actually worked to petitioner's detriment. Finally, respondent urges that petitioner "was a mature man engaged in business dealings" who had previously been licensed under this same statute, and in a supplementary exhibit certified records are submitted of several prior convictions of petitioner for the offense of issuing a check without sufficient funds; the argument apparently is that petitioner must be deemed to have learned from this experience the elements of the present crime and at least the rudiments of criminal procedure. As stated in *People* v. *Phillips* (1964) 229 Cal.App.2d 496, 503 [40 Cal.Rptr. 403], however, "Aside from the *a posteriori* nature of this reasoning, the People equate waiver with intelligence. We are not here concerned with the intelligence of defendant, but with whether he made an *intelligent waiver.* The right to counsel, needless to say, is accorded to the intelligent as well as the unintelligent." (See, e.g., *Bogart* v. *Superior Court* (1963) 60 Cal.2d

We conclude there was no effective waiver in the case at bar, and hence that petitioner was denied his constitutional right to the assistance of counsel. Respondent cites *In re Bell* (1967) 247 Cal.App.2d 655 [55 Cal.Rptr. 705], however, for the proposition that such a denial requires the judgment to be set aside on habeas corpus only ''where a loss or impairment of a crucial defense has resulted.'' (*Id.* at p. 660.) Applying that proposition to the present case, respondent argues ''it is clear'' that petitioner was selling produce without a license and ''There is nothing in his petition to demonstrate any line of defense that seems to have the slightest possibility of success.''

 We may not constitutionally engage in such an inquiry, for no showing of prejudice is required when the error is of the dimensions of denial of counsel. As recently summarized by Mr. Justice Stewart, ''When a defendant has been denied counsel at trial, we have refused to consider claims that this constitutional error might have been harmless. 'The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' *Glasser* v. *United States,* 315 U.S. 60, 76 [86 L.Ed. 680, 702, 62 S.Ct. 457]. That, indeed, was the whole point of *Gideon* v. *Wainwright,* 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733], overruling *Betts* v. *Brady,* 316 U.S. 455 [86 L.Ed. 1595, 62 S.Ct. 1252]. Even before trial, when counsel has not been provided at a critical stage, 'we do not stop to determine whether prejudice resulted.' *Hamilton* v. *Alabama,* 368 U.S. 52, 55 [7 L.Ed.2d 114, 117, 82 S.Ct. 157] ; *White* v. *Maryland,* 373 U.S. 59, 60 [10 L.Ed.2d 193, 194, 83 S.Ct. 1050].'' (*Chapman* v. *California* (1967) 386 U.S. 18, 42 [17 L.Ed.2d 705, 721, 87 S.Ct. 824] (concurring opinion).) Our decision in *Johnson* was but one of many habeas corpus proceedings in which we have unhesitatingly applied this rule to set aside judgments of conviction upon a showing of denial of right to counsel, without a finding that the assistance of an attorney would actually have benefited the petitioner (see, e.g., *In re Boyce* (1959) 51 Cal.2d 699 [336 P.2d 164] ; *In re James* (1952) 38 Cal.2d 302 [240 P.2d 596] ; see also *In re Jones* (1948) 88 Cal.App.2d 167 [198 P.2d 520]).

---

436, 440 [34 Cal.Rptr. 850, 386 P.2d 474] [attorney-defendant has same right to counsel as a layman].) There is no showing that petitioner had ever been prosecuted for the present offense, or had waived the right to counsel in any of his previous trials. (Compare *In re Johnson* (1965) *supra,* 237 Cal.App.2d 463, 468.)

The court in *Bell* was misled by a false analogy to the rule applicable in determining whether a trial in which the defendant did have an attorney was nevertheless reduced to "a farce or a sham" because of that attorney's incompetence or lack of diligence. A defendant who has been afforded the assistance of counsel must bear a heavy burden if he contends that assistance was in fact worthless, and one of the few ways in which he can succeed is to establish that through a mistake of law or fact his counsel withdrew a crucial defense from the case (e.g., *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 863, 386 P.2d 487]). In effect there is a presumption, born of necessity and experience, that under our adversary system of justice an attorney will strive to defend his client's interests to the best of his professional ability. But it is evident that no such presumption attaches when a defendant has been denied any attorney whatever; in that case, as here, an appellate court could conclude there was "no prejudice" only upon a finding that of the many and varied efforts an attorney could have undertaken for the defendant, not one would have been of benefit. In most cases such a finding would indeed require "impossible prescience," and the risk that it may be erroneously made is one to which a defendant may not constitutionally be subjected. (See also *Douglas* v. *California* (1963) 372 U.S. 353, 354-355 [9 L.Ed.2d 811, 813, 83 S.Ct. 814], overruling *People* v. *Hyde* (1958) 51 Cal.2d 152, 154 [331 P.2d 42].)[14]

We conclude that the denial of petitioner's right to counsel requires his judgment of conviction to be set aside without inquiry into the matter of prejudice. The cases of *In re Bell* (1967) *supra*, 247 Cal.App.2d 655, *People* v. *Goldman* (1966)

---

[14]Nor are we persuaded by the reasoning of a decision cited in *Bell* (*People* v. *Goldman* (1966) 245 Cal.App.2d 376, 382, fn. 4 [53 Cal. Rptr. 810]), which purports to draw a further analogy between the permissible inquiry into whether a denial of counsel at a time other than during actual trial nevertheless occurred at a "critical stage" of the prosecution (e.g., *White* v. *Maryland* (1963) 373 U.S. 59 [10 L.Ed.2d 193, 83 S.Ct. 1050]) and an impermissible examination of the evidence to determine whether such a denial resulted in a "miscarriage of justice" under article VI, section 13█ of the California Constitution or any other test (e.g., *Chapman* v. *California* (1967) *supra*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]). The former inquiry turns ordinarily on an abstract consideration of the law governing that stage in any case tried in the same jurisdiction (see, e.g., *In re Levi* (1952) 39 Cal.2d 41, 45-46 [241 P.2d 403]), and *does not* authorize unbridled speculation as to what benefit an attorney might have been to the particular defendant in the particular case before the court.

*supra,* 245 Cal.App.2d 376 [53 Cal.Rptr. 810], *In re Van Brunt* (1966) 242 Cal.App.2d 96 [51 Cal.Rptr. 136], and *In re Kelly* (1966) 242 Cal.App.2d 115, [51 Cal.Rptr. 148], are disapproved insofar as they are inconsistent with this conclusion.

## Right to a Speedy Trial

Article I, section 13, of the California Constitution declares that ''In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial. . . .''[15] Penal Code section 1382, a statute ''supplementary to and a construction of'' the Constitution (*People* v. *Wilson* (1963) 60 Cal.2d 139, 145 [32 Cal.Rptr. 44, 383 P.2d 452]), provided at the time here relevant: ''The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases: . . . 3. Regardless of when the complaint is filed, when a defendant in a misdemeanor case in an inferior court is not brought to trial within 30 days after he is arrested . . . ; except that an action shall not be dismissed under this subdivision (1) if it is set for trial on a date beyond the prescribed period at the request of the defendant or with his consent, express or implied. . . .''

Petitioner alleges he was denied his constitutional and statutory right to a speedy trial under the foregoing provisions; in particular, he alleges he was not advised of his right to be brought to trial within the 30-day limit specified in section 1382, was not tried within that period, and did not effectively ''waive time'' or consent to the delay. The record supports these allegations.

Computation of the precise number of days that elapsed before petitioner was brought to trial is difficult in this case because it does not clearly appear when, if ever, he was arrested on the charge now in issue. The first docket entry recites that the complaint was filed on July 15, 1965. The complaint jointly charged petitioner and Miloslavich with violating Agricultural Code section 1263, and prayed that a warrant be issued for their arrest. On that date, however,

---

[15]The virtually identical provision of the Sixth Amendment to the United States Constitution has been declared applicable to the states through the Fourteenth Amendment. (*Klopfer* v. *North Carolina* (1967) 386 U.S. 213 [18 L.Ed.2d 1, 87 S.Ct. 988].) In the present case, however, we need not reach federal constitutional issues on this point, for the provisions of state law are adequate to protect petitioner's right to a speedy trial.

petitioner was already in custody in the Imperial County jail, serving a six-month sentence for issuing checks without sufficient funds. There was therefore no need to "arrest" him;[16] and although the entry for July 15 further recites that a "Warrant issued," such a warrant would have been appropriate for the arrest of the codefendant and there is no evidence it was ever served on petitioner.[17]

The history of section 1382, subdivision 3, suggests that the Legislature has had difficulty in drafting a workable definition of the date from which the 30-day period begins to run. As originally enacted in 1931, the statute declared that the period began with "the filing of the complaint." "This provision, although having its virtue for definiteness and certainty, was obviously impractical in cases where a complaint was filed first and a period of time elapsed before the defendant was arrested." (*Burns* v. *Municipal Court* (1961) 195 Cal.App.2d 596, 598-599 [16 Cal.Rptr. 64].) In 1935, accordingly, the statute was amended to make the period begin when "the defendant is arrested and brought within the jurisdiction of the court." That formulation, however, proved unsatisfactory because of its vagueness, giving rise to a variety of appellate interpretations of its meaning. (*Burns* v. *Municipal Court, supra*; compare the majority and concurring opinions in *Brewer* v. *Municipal Court* (1961) 193 Cal.App.2d 510, 517 [14 Cal.Rptr. 391]; see also 35 Ops.Cal.Atty.Gen. 196.) In 1961 the statute was therefore amended to read as quoted hereinabove, i.e., "Regardless of when the complaint is filed" the defendant must be brought to trial within 30 days "after he is arrested." But that wording was not adequate to cover cases such as the one before us, in which the defendant was already in custody on a prior charge, nor did it meet the difficulties posed when the arrest took place outside the jurisdictional territory of the court (see *Burns* v. *Municipal Court* (1961) *supra*, 195 Cal.App.2d at pp. 601-602). In 1965 the statute was again amended, and now provides that the 30-day

[16]"An arrest is taking a person into custody. . . ." (Pen. Code, § 834.) "An arrest is made by an actual restraint of the person, or by submission to the custody of an officer." (Pen. Code, § 835.)

[17]It is possible, however, that petitioner was arrested on this charge as early as May 4, 1965. The typewritten records of the Imperial County jail show that petitioner was booked on that date on the bad check charge, and contain a handwritten entry to the effect that petitioner was also booked on the present Agricultural Code violation. The latter entry, of course, could have been made at a subsequent time.

period runs from the date of arraignment rather than the date of arrest.[18]

In the circumstances of this case we need not decide when petitioner was "arrested" on the present charge. Even taking the latest date yet declared by the Legislature, that of arraignment, petitioner's trial date was fixed beyond the 30-day period: he was arraigned on August 11, 1965, and trial was set for September 15, 35 days later. No good cause is shown for this delay.[19]

 Respondent contends the date was fixed with petitioner's consent, emphasizing that the minutes of the arraignment recite that petitioner "Waived time." Petitioner denies that he did so, and the arraignment judge had no recollection whatever on this point. But we need not resolve any such factual conflict. Since an amendment in 1959, section 1382 has concluded with the following provision: "If the defendant is not represented by counsel, he shall not be deemed under this section to have consented to the date for his trial unless the court has explained to him his rights under this section and the effect of his consent."[20] Here petitioner was not represented by counsel, and the record is devoid of a showing that the court explained to him his rights under this section. Responent concedes, moreover, that "there is no evidence before us as to whether petitioner was advised of the effect of the agreement to waive time."

 Respondent argues, however, that we should presume official duty was performed in this respect, "in the absence of some specific evidence that petitioner was not so advised." The argument is untenable. If any more "specific evidence" of a failure to advise petitioner is needed than a record which is bare of such advice, it may be found in the testimony given by the arraignment judge at the superior court hearing: that judge recited the list of "legal rights" of which he had advised petitioner, and the right to be brought to trial within 30 days is conspicuously absent. In any event, the whole purpose

---

[18]The amendment was apparently adopted before the present complaint was filed, but it did not go into effect until September 17, 1965, two days after the first date set for petitioner's trial.

[19]Petitioner was in fact not tried until October 21, a continuance having been granted at the prosecutor's request on September 15 to permit a joint trial of petitioner and Miloslavich.

[20]Contrary to the implication in California Criminal Law Practice (Cont. Ed. Bar 1964), page 346, the quoted provision applies by its terms to the entire section 1382, i.e., to proceedings in superior as well as inferior courts. (See Witkin, Cal. Criminal Procedure (1963), § 316, p. 310.)

of the 1959 amendment to this statute was to insure that a defendant without counsel would not waive his right to a speedy trial through ignorance or oversight; that intent would be defeated if the prosecution were allowed to shift to the defendant the burden of proving the negative fact that he was not given an explanation to which he did not know he was entitled.

It should therefore have been obvious since 1959 that an adequate record was required to secure a right thus singled out by the Legislature, and our appellate courts have insisted on such a showing. In *Burns* v. *Municipal Court* (1961) *supra,* 195 Cal.App.2d 596, 598, a misdemeanor trial was set for a few days beyond the 30-day limit, and a docket entry recited that the defendant was advised of his legal rights. The Court of Appeal emphasized it was also necessary to advise him of "the effect of his consent," and stated that "When consent is claimed it therefore *must be affirmatively shown* that the provisions of this section were complied with. We hold that a mere entry in the court's docket that a defendant has been advised of his rights is not sufficient as a matter of law to show consent within the meaning of said section 1382. The burden is upon the party claiming waiver to prove it. [Citations.] Under such circumstances petitioner cannot be deemed to have consented to the date for his trial. [Citation.]" (Italics added.) Again, in *Hill* v. *Municipal Court* (1962) 206 Cal.App.2d 257, 260 [24 Cal.Rptr. 34], the arraignment judge actually advised the defendant she was entitled to be brought to trial within 30 days. He then asked her if she was willing to waive the statutory time, and she replied in the affirmative. Nevertheless, the appellate court noted that the judge had not further advised her she would be entitled to a dismissal if trial were set beyond 30 days without her consent; the court quoted from *Burns* to the effect that "When consent is claimed it therefore must be affimatively shown that the provisions of this section were complied with," and held that the defendant's purported consent to setting her case for trial beyond the statutory period "was not legally effective."

In the case at bar there is neither a docket entry reciting that petitioner was advised of his rights (as in *Burns*) nor a showing that he was at least partially advised and affirmatively waived time (as in *Hill*); it follows *a fortiori* that on this silent record we cannot presume that this essential advice was given. In the future it will be a simple matter for the

trial courts to make docket entries reflecting the explanation given to defendants without counsel pursuant to this provision of section 1382.

Petitioner did not lose his right to complain of the denial of a speedy trial by reason of his failure to raise the matter in the trial court or on an appeal. For the purpose of effectively vindicating this constitutional guarantee, as well as promoting the orderly administration of justice, we generally require that a defendant who charges denial of a speedy trial take various steps to assert his claim in a timely manner, such as objecting to the date set and thereafter moving to dismiss. (*People* v. *Wilson* (1963) 60 Cal.2d 139, 146-148 [32 Cal.Rptr. 44, 383 P.2d 452], and cases cited.) But the defendant in *Wilson* and similar cases was represented by counsel at all relevant times; by contrast, the necessity of taking such steps would not be apparent to a defendant who is without an attorney, and it would be indulging in an unwarranted fiction to assume that the failure of such a defendant to object was a deliberate, tactical move on his part. ██ Accordingly, the better reasoned decisions specify that ''Where the cause is set for trial in the presence of the defendant *and his counsel,* and no objection is made to the date being beyond the statutory period, the objection is deemed waived.'' (Italics added.) (*People* v. *Anderson* (1954) 126 Cal.App.2d 702, 704 [272 P.2d 805]; accord, *Dulsky* v. *Municipal Court* (1966) 242 Cal.App.2d 288, 291 [51 Cal.Rptr. 381]; *People* v. *Garcia* (1963) 222 Cal.App.2d 755, 759 [35 Cal.Rptr. 443]; *People* v. *Baker* (1958) 164 Cal.App.2d 99, 103 [330 P.2d 240]; *Krouse* v. *Justice's Court* (1951) 103 Cal.App.2d 311, 314 [229 P.2d 806], and cases cited.)

Thus, in *In re Bishop* (1962) 201 Cal.App.2d 604, 609 [20 Cal.Rptr. 186], the defendants were arrested on a misdemeanor charge on December 25, 1961; trial was first set for January 18, 1962, but on that date the defendants accepted the court's offer to appoint counsel; at the same time, however, the court set February 8 as the new date for trial, without objection by the defendants but without advising them of their right to be brought to trial within 30 days of their arrest. In discharging the defendants from custody on an application for habeas corpus, the Court of Appeal observed that ''The failure to object, by these defendants *prior to their being represented by counsel,* to the trial date beyond the 30-day period, did not constitute consent (Pen. Code, § 1382); neither did the mere appointment of counsel for them after

the trial date had been fixed constitute a waiver. [Citation.] *Had counsel been present* in court at the time the judge fixed the date, then by failing to voice an objection consent would be presumed and constitute a waiver." (Italics added.)

Here petitioner was without counsel when the date for his trial was set beyond the statutory limit, when he was finally brought to trial, and when the judgment of conviction was rendered.[21] In these circumstances his failure to raise the issue below cannot be deemed to constitute a waiver.

Finally, as respondent concedes, the denial of a speedy trial in the case at bar is automatically prejudicial in view of the provision in Penal Code section 1387 that an order of dismissal under section 1382 "is a bar to any other prosecution for the same offense if it is a misdemeanor. . . ." (See *People* v. *Wilson* (1963) *supra*, 60 Cal.2d 139, 153, fn. 5.) Accordingly, the judgment convicting petitioner of violating Agricultural Code section 1263 must be set aside, and he is not subject to retrial on this charge.

The writ of habeas corpus is granted and petitioner is ordered discharged from custody insofar as it relates to the conviction which is the subject of this proceeding.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

[21]In his answer to the return, petitioner states he did not pursue his procedural remedies because he "was never advised of his right to appeal, had no counsel to object, and was ignorant of the law regarding this matter."