Filed 12/21/20  P. v. Garcia CA3

# NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JORGE ANDRES TORRES GARCIA,<br><br>Defendant and Appellant. | C089545<br><br>(Super. Ct. No. CRF201573201) |

Defendant Jorge Andres Torres Garcia appeals the trial court's order denying his petition for resentencing pursuant to Penal Code section 1170.95.  On appeal, defendant contends his voluntary manslaughter conviction is eligible for relief under the new law. Disagreeing, we affirm.

1

BACKGROUND

A 2016 information charged defendant and his codefendant with murder (Pen. Code, § 187);[1] attempted second degree robbery (§§ 21a, 211, 212.5, subd. (c)); and conspiracy to commit a felony (§ 182, subd. (a)(1)). The information alleged defendant was culpable for murder pursuant to felony-murder principles articulated in section 190.2, subdivision (a)(17), and that the codefendant personally discharged the firearm that resulted in the victim's death.

In 2017 defendant pleaded no contest to voluntary manslaughter (§ 192, subd. (a)) and other crimes, in exchange for a stipulated sentence of 14 years in state prison. Consistent with that agreement, the trial court sentenced defendant to a term of 14 years in state prison.

Later, a jury acquitted the codefendant of all charges.

"In 2018, the Legislature passed and the Governor signed into law Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), which restricted the circumstances under which a person can be liable for felony murder and abrogated the natural and probable consequences doctrine as applied to murder. (Stats. 2018, ch. 1015.) [The law added section 1170.95,] . . . a procedure permitting qualified persons with murder convictions to petition to vacate their convictions and obtain resentencing if they were previously convicted of felony murder or murder under the natural and probable consequences doctrine." (*People v. Flores* (2020) 44 Cal.App.5th 985, 989 (*Flores*).)

In March 2019 defendant filed a petition for writ of habeas corpus, seeking vacatur of his manslaughter conviction pursuant to section 1170.95, because he was "charged with the same charges as [codefendant] . . . under the [f]elony-[m]urder rule."[2]

---

[1] Further undesignated statutory references are to the Penal Code.

[2] Defendant asserts the trial court construed the habeas petition as a petition under section 1170.95.

The trial court denied the petition, ruling that Senate Bill No. 1437 violates provisions of the California Constitution.

Defendant appealed, characterizing the trial court's ruling as a denial of a petition for resentencing pursuant to section 1170.95.

## DISCUSSION

The parties agree that Senate Bill No. 1437 does not violate provisions of the California Constitution. But they disagree whether defendant's voluntary manslaughter conviction is eligible for relief pursuant to section 1170.95. We agree with the People that defendant's voluntary manslaughter conviction is ineligible for relief pursuant to section 1170.95.**[3]**

## I

Defendant argues that the *only* "logical way to read" language in subdivision (a)(2) of section 1170.95, is that "the Legislature intended those who pleaded to a lesser crime to avoid a murder conviction to be able to challenge their convictions of the lesser crime by way of this petition process." The provision, which states one of the three threshold (and conjunctive) conditions that a successful petitioner must satisfy, reads: "The petitioner was convicted of first degree or second degree murder following a trial *or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder*." (§ 1170.95, subd. (a)(2), italics added.)

We disagree that the only reasonable reading of this language, in context, is that a manslaughter conviction is eligible for relief pursuant to section 1170.95. (See *Flores, supra*, 44 Cal.App.5th at p. 995 [rejecting a similar contention, because it "places outsized importance on a single clause to the exclusion of the provision's other

---

**[3]** "In view of our disposition of the case on other grounds, we need not reach" defendant's constitutional arguments regarding the statute. (*In re Smiley* (1967) 66 Cal.2d 606, 610, fn. 1.)

language," as "the remaining portions of section 1170.95 repeatedly and exclusively refer to murder, not manslaughter"].)

Further, the apparent ambiguity in subdivision (a)(2), which defendant identifies via a statutory construction argument, is not what it appears to be. Defendant contends that if eligibility for relief under section 1170.95 were limited to murder convictions, this "would . . . render . . . meaningless" the language of section 1170.95, subdivision (a)(2) that we italicized above.

We disagree, for the reasons provided in *People v. Sanchez* (2020) 48 Cal.App.5th 914, 919: "Specifying that section 1170.95 applies to murder convictions both by trial and by guilty plea clarifies that it does not matter how the murder conviction was obtained for section 1170.95 to apply. Regardless of whether that clarification was necessary, ' "the Legislature may choose to state all applicable legal principles in a statute rather than leave some to even a predictable judicial decision." ' [Citation.] Express statutory language defining the class of defendants to whom section 1170.95 applies is not surplusage. [Citation.] Such clarification 'may eliminate potential confusion and avoid the need to research extraneous legal sources to understand the statute's full meaning.' "

Even if we assume for the sake of argument that subdivision (a)(2) is ambiguous, we agree with the analysis in *People v. Turner* (2020) 45 Cal.App.5th 428, that the legislative history of Senate Bill No. 1437 reflects that the Legislature wanted to provide relief only to those who were convicted of felony murder or of murder on a natural and probable consequences theory. (See *People v. Turner, supra*, 45 Cal.App.5th at pp. 436-438.)

Defendant maintains that our conclusion leads to absurd results, because a defendant convicted after a jury trial "of a now-invalidated theory of felony murder could have his murder conviction vacated under section 1170.95," whereas a different defendant, "who engaged in the same conduct but . . . accept[ed] a voluntary

manslaughter plea deal resulting from the fear of a potential or threatened felony murder conviction would continue being saddled with the consequences of that decision." Defendant insists that the two defendants "are identically situated" "in terms of culpability"; but "the second one would be punished more harshly than the first."

Defendant's scenario ignores that section 1170.95 contemplates relief for those convicted "of a now-invalidated theory of felony murder," *only if* they can demonstrate that they "could not be convicted of . . . murder because of changes to [s]ection 188 or 189 made effective" by Senate Bill No. 1437. (§ 1170.95, subd. (a)(3).) In addition to the "actual killer" (§ 189, subd. (e)(1)) and one who with intent to kill assisted the actual killer (§ 189, subd. (e)(2)), new section 189, subdivision (e)(3) contemplates murder liability for one who "was a major participant in the underlying felony and acted with reckless indifference to human life." Thus, the hypothetical is too general for purposes of the question before us, as *neither* of the two individuals in the hypothetical would be entitled to relief if they were both major participants in an underlying felony and acted with reckless indifference to human life; but the individual who accepted a voluntary manslaughter plea would be punished *less* harshly.

Further, even assuming defendant's hypothetical is valid, our conclusion that defendant's voluntary manslaughter conviction is not eligible for relief pursuant to section 1170.95 still is not "absurd," because the Legislature reasonably could have concluded that reform is necessary only in murder cases. (See *Flores, supra*, 44 Cal.App.5th at pp. 996-997 [rejecting the contention that an interpretation "limit[ing] [section 1170.95's] ameliorative benefits only to defendants convicted of murder" would be absurd].)

## II

Defendant argues "it is a violation of equal protection to exclude" his manslaughter conviction from section 1170.95 relief. Such exclusion, he maintains,

would be "manifestly unjust" and "especially unfair because, at the codefendant shooter's trial, the jury found that no crime had been committed."

The People disagree, arguing that defendant is not similarly situated to defendants convicted of murder, and the Legislature has a rational basis to distinguish between voluntary manslaughter and murder convictions.

We agree with the People.

" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' " (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)

Because defendant was convicted of voluntary manslaughter, a different crime from murder, that carries a different punishment, he is not similarly situated to those convicted of murder. (See *People v. Cervantes* (2020) 44 Cal.App.5th 884, 888 [rejecting an equal protection challenge to section 1170.95 by an offender convicted of voluntary manslaughter].) Thus, defendant's equal protection challenge fails at the first step.

Defendant's contention—that the relevant similarity is that both he ("who pleaded guilty to voluntary manslaughter to avoid a felony murder conviction") and "a prisoner convicted of felony murder," suffer from "convictions [that] were obtained before [Senate Bill No. 1437's] effective date and where in neither case could a felony murder conviction now be obtained under the law"—is unpersuasive, as it ignores *Cooley*'s guidance that, when considering an equal protection challenge, the relevant inquiry is whether the claimant is similarly situated *for purposes of the law challenged*. Section 1170.95's objective is to provide relief to those *convicted* of felony murder. Defendant's

6

manslaughter conviction renders him not similarly situated to those the law was intended to benefit.

Though we recognize the codefendant's acquittal may appear troubling to some, defendant provides no legal authority for the proposition that, having pleaded no contest to voluntary manslaughter, he must be allowed to benefit from a jury's verdict acquitting his codefendant of murder. (Cf. *People v. Ward* (1953) 118 Cal.App.2d 604, 608 [recognizing the "unhappy denouement" of a prosecution, where the codefendant who fired the fatal shot was acquitted of murder, while the defendant remains in prison after a guilty plea that he entered knowing "the consequences of conviction after a contested trial"; but ruling that codefendant's acquittal does not warrant relief for the defendant under "any legal principle"].)

DISPOSITION

The judgment (order) is affirmed.

/s/
RAYE, P. J.

We concur:

/s/
BLEASE, J.

/s/
KRAUSE, J.

7