[Crim. No. 3641. Third Dist. Nov. 2, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND FERRY, Defendant and Appellant.

Stanley Lerner, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris Maier, Assistant Attorney General, Raymond M. Momboisse and Richard K. Turner, Deputy Attorneys General, for Plaintiff and Respondent.

VAN DYKE, J.*—Defendant appeals from a judgment entered after he changed his plea of not guilty to guilty of robbery in the second degree.

His two contentions on appeal are that he was denied the right to counsel and denied the right to compel the attendance of witnesses in his behalf. We append a footnote[1] containing

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] On December 19, 1963, an information was filed in the superior court charging appellant with robbery from the person. Later an amended information included charges of four prior felonies. On December 23 defendant appeared for arraignment. He stated he was without funds to employ private counsel and wanted the public defender to represent him. The public defender, then present, stated defendant had

a recital of the proceedings which terminated in a plea of guilty to and sentencing for second degree robbery.

██ There can, of course, be no question of the right to counsel to represent one accused of crime. The due process clause of the Fourteenth Amendment of the federal Constitution includes the Sixth Amendment's guarantee of an ac-

told them he owned a substantial amount of property, and for that reason the public defender's staff thought defendant might not be a proper subject for their representation. The cause was continued for one week and the court directed the defendant to make an effort to hire an attorney. On his next appearance, December 30, defendant stated he desired to employ one Mr. DeCristoforo, that he was endeavoring to arrange payment of his fee but had so far been unable to do that. Mr. DeCristoforo, who was present, requested a continuance of one week, which was granted. On January 6, 1964, defendant appeared again with Mr. DeCristoforo present. Defendant stated he had not been able to provide funds and wanted the public defender appointed. The public defender stated defendant owned 640 acres of land in Placer County valued at $1,200-$1,500 an acre but was without immediate cash. Upon inquiry from the court, Mr. DeCristoforo stated there were no prospects that he would be retained. The court asked defendant if he wanted to hire an attorney, stating that the court would not appoint the public defender if defendant had funds to obtain private counsel. Defendant stated that funds were not presently available because the land (part of an estate) was under probate and it would take probably six months to a year before probate would be completed. Defendant said he was attempting to borrow money from relatives. The court then appointed the public defender, and defendant entered a plea of not guilty to the charge of robbery as the information then stood. The cause was set for trial on the 11th of February.

Prior to the trial date defendant appeared in court with the public defender who advised the court that upon further investigation they found defendant had inherited 40 acres of land with an appraised value of $5,432; that the estate would not be ready for distribution until March or April; that because of this inheritance the public defender did not believe it was a proper case for his office to defend since defendant was not indigent. The court told defendant he would either have to get counsel or appear as his own counsel on February 11. On that date defendant was before the court. The public defender was present and stated that defendant had sent for him, apparently for aid in contacting private counsel, and the cause was thereupon further continued, defendant waiving time.

On February 14 defendant appeared, again accompanied by the public defender who advised the court that defendant had in the interim talked with two attorneys, a Mr. Snyder and a Mr. Heekin; that Mr. Snyder had quoted a price of $500 but he and defendant had not reached an agreement; that Mr. Heekin, after talking with defendant, had called the public defender and suggested that defendant's case was a proper one for public defense. Defendant told the court he had not been able to borrow money on the land but would be willing to sign a lien on the property to the public defender. He pointed out that he, himself, had not been able to make money because he had had only 27 months of freedom since 1950 and had 11 children to support. It appeared that Mr. Heekin had declined to take security on the land. Thereupon, the cause was continued for five days to enable the public defender to make a more intensive investigation as to indigency.

On February 19 defendant appeared accompanied by the public defender who informed the court that the value of the property was $5,000 and that the estate should be closed within approximately two

cused's right to counsel, and counsel must be provided for an accused who is unable to employ counsel unless the right is competently and intelligently waived. (*Gideon* v. *Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R. 2d 733].) The right to counsel as being a fundamental constitutional right has received full recognition in California,

---

months, for which reasons he considered the assets were such that they could be utilized by the defendant in order to retain counsel. Again the matter was continued.

On February 24 defendant appeared accompanied by Mr. Snyder who said that no agreement had been reached for representation by him and that defendant had indicated he wanted an attorney of greater experience. Defendant stated that he was trying to contact another attorney whom he believed would be satisfactory.

On February 26 defendant appeared accompanied by Mr. Earl Warren, Jr., who stated he believed that an agreement could be reached whereby he would represent defendant and for that purpose requested a continuance of three weeks, which was granted. On March 18 defendant appeared with Mr. Warren acting as his counsel. Again a plea of not guilty was entered; time for trial was further waived. On March 27 defendant, represented by Mr. Warren, entered a denial of the four prior convictions which then stood charged in an amended information. Trial was set for April 23, 1964.

On April 23, before a jury was impaneled, Mr. Warren stated to the court that ". . . Mr. Ferry has recently, just now in fact, conveyed to me the information that he perhaps wants to make a motion on his own in this regard. . . ." Defendant then stated that "There seems to be a misunderstanding between Mr. Warren and myself, and I think it is in the best interests of all concerned that he withdraw from the case at this time." Defendant said Mr. Warren was a good man but they did not seem to agree and he was going to get another attorney. When the court pressed him for further explanation, he said it was a matter about money, that he wanted to pay Mr. Warren before he went to court because "he has to have his fees." Thereupon Mr. Warren stated that it was true no financial arrangements had been made but "since I did agree to enter the case and did make the various appearances, I am willing to continue in this matter, whether or not I ever receive any compensation." Defendant stated that there was more to it than the matter of attorney's fees and that he was waiting for some of his own witnesses. He asked more time to contact witnesses and said he then might be able to pay Mr. Warren. Asked about his witnesses, he stated he only knew their nicknames, that they had several names, and he could not say for sure where they lived but they would show up in Sacramento, although now they could be in Los Angeles. In explanation of his evasiveness as to naming his witnesses, he asserted that he did not want them to be intimidated. After a recess and a conference with counsel in chambers, the court stated to defendant, upon reconvening: ". . . I am going to do this now. Your attorney in this case, I am going to excuse Mr. Warren as you requested, so he is released from his obligation to represent you as attorney. I am going to give you a continuance for the purpose of securing another attorney and getting your witnesses. . . . Now, I want the record to show that you are requesting the continuance in this matter, that you are doing it for the purpose of obtaining another attorney and on the basis of contacting witnesses. I am going to give you thirty days. . . . We will continue this trial and set this for May 25th. Now, I am going to make it very clear to you right now that there aren't going to be any other continuances beyond May 25th, and if you don't have your other attorney and have your witnesses

and the right has been carefully guarded by the state courts. (Cal. Const., art. I, § 13; Pen. Code, §§ 859, 987; *Bogart* v. *Superior Court*, 60 Cal.2d 436, 438 [34 Cal.Rptr. 850, 386 P.2d 474]; *In re James*, 38 Cal.2d 302, 310 [240 P.2d 596]; *People* v. *Williams*, 124 Cal.App.2d 32, 38 [268 P.2d 156].) In this case the right to counsel was recognized throughout. But a question arose as to whether defendant qualified as an

---

and be ready to go on May 25th, then the Court is going to order you to go to trial and represent yourself without your witnesses. Now, you have already had almost five months in which to contact any witnesses that you have. I am going to advise you at this time you are entitled to have a subpoena issued by the Court to compel any person to attend as a witness in this court, and if you will give me the names of witnesses today, as I have asked you to, I will today issue subpoenas to compel them to attend. Now, are you prepared to give me their names at this time? THE DEFENDANT: May I submit those names to you in the very near future? THE COURT: All right. If you understand clearly you are going to trial on May 25th. . . . [T]his will be the order of the Court then, that the matter is continued until May 25th, and Mr. Warren is released from his obligation. THE DEFENDANT: And Judge, your Honor, I will tell you right now I do know the names of my witnesses, and I will try to have them on hand. THE COURT: You are going to have to move.'' Prosecution witnesses, some had been brought from San Francisco, were recognized and directed to appear on the next trial date.

On May 25 the cause was called for trial, the People answered ready, but defendant, when asked if he was ready to proceed, replied, ''Judge, your Honor, I didn't get my witness. I have letters here that I have traced for my main witness as far as two weeks ago. She's in Stockton at the present time. THE COURT: That's your wife, is that right, Mr. Ferry? THE DEFENDANT: Yes, your honor, she is. THE COURT: Now, let me tell you this. You were arrested for this offense November 16, 1963, and the original complaint was filed on November 18th, 1963. Preliminary hearing was held on December 18th and you were bound over to the Superior Court, and your first appearance in Superior Court was December 23rd, 1963. And at that time you were given a continuance of one week to December 30th, to permit you to arrange to employ private counsel. That means at that time you had five weeks total to get a private attorney. . . . Despite that, on December 30th, you appeared in court, and it was continued again to January 6th. And on January 6th you were in court with the Public Defender representing you. And this was with your own knowledge, because the court minutes indicate this was a temporary arrangement until you could get a private attorney of your own. On January 6th this case was set for trial on February 11th. On January 28th the Public Defender's Office withdrew, and you were ordered at that time by Judge Coughlin to get your private attorney. Now, that's January 28th.

''February 11th there was a further continuance until February 14th. And at this time you still haven't hired a private attorney. Now, that means a period of almost three months.

''On February 14th you still had the Public Defender appearing for you. You still know that the Public Defender won't appear for you because you have these assets in your mother's estate. Anyway, on February 19th Judge Coughlin continued again to February 24th.

''Now, some place in there, between February 14th and February 24th you employed an attorney by the name of L. M. Snyder to represent you, because he appeared as your attorney on February 24th. But he asked to be released from the obligation of representing you, and he was, and the case was continued to February 26th.

indigent entitled to be represented by the public defender. In the beginning appellant asserted his indigence and asked that he be so defended. That request was granted and the assignment was accepted. At the same hearing, however, the public defender raised the question of indigence.

It can be said with confidence that defense by the public defender would have advantaged both the appellant and the

"On February 26th you showed up. You were represented at that time by Earl Warren, Jr. And the matter was set over to the master calendar for trial and it was set for trial on April 23rd. . . .

". . . March 27th the complaint was amended. On April 23rd when you came into court Mr. Warren asked if he could withdraw. You indicated you wanted him to withdraw, so I made an order permitting him to withdraw. At that time I told you very clearly that you were to line up your witnesses and be ready for trial on May 25.

"Now, what we have here, you have a period of time from November 16th, 1963, when you were arrested, until May 25th, which is seven months, in which you had the right to employ your attorneys, line them up and find your witnesses. And when you tell me that you don't know where your wife has been for a period of seven months, and you can't find your witnesses, and you tell me in open court as you did the last time that you don't know the names of your witnesses, I can reach only one conclusion, and that is that you are deliberately attempting to delay this trial.

"Under those circumstances, I think the Court is justified in ordering you to proceed to trial and to defend yourself at this time. And I am going to so order. . . ."

The court then advised defendant that if he admitted the priors no mention could be made of them during the trial unless upon cross-examination if he testified. But if they stood denied, then they could be proved and commented on.

During further discussion it appeared that before his arrest and up to trial defendant had been on parole. The following then occurred: "THE DEFENDANT: Without my witnesses I can't defend my case. THE COURT: I'm sorry. You have had seven months to get those witnesses, and I am not going to give you any further continuance. . . . THE DEFENDANT: As a parolee, I would like to have you withdraw from the case? THE COURT: Why? THE DEFENDANT: Well, things happened in North Sacramento when you was [sic] Judge there. THE COURT: You never appeared before me. . . . THE DEFENDANT: And I would like you to withdraw from the case. I have no witnesses here and I want an attorney to represent me. It's silly for me to try to defend myself. THE COURT: . . . I am not going to give you any further continuance. . . . You are going to trial today. THE DEFENDANT: I have no money to hire an attorney. . . . The Administrator of my estate has been taking care of my children since 1950. My debts far exceed my inheritance I will receive. THE COURT: The Public Defender's Office checked that out, and they say that that is not true, Mr. Ferry. THE DEFENDANT: I would like to contact J. Allen Jones to defend me. THE COURT: You have had a month to do that. I told you one month ago that you were going to go on trial today. THE DEFENDANT: I would like to have this one continuance. THE COURT: No further continuances will be granted. THE DEFENDANT: I would like to contact Gordon Fleury. THE COURT: No further continuances will be granted. THE DEFENDANT: Then you will have to try me without an attorney then. THE COURT: That's what I intend to do, and I intend to do it this morning. I want to make it perfectly clear to you as to what your position is. Now, I want you to understand on these prior convictions, do you admit those

court. Sacramento County has long maintained a public defender. That official has a staff of deputy public defenders and one or more investigators. He has a fully equipped office and a secretarial staff. But indigence is a qualification required for such representation at public expense. This statutory standard is necessarily a flexible one and the question must be approached and solved realistically. The need

or do you want to deny them? THE DEFENDANT: I have no attorney to defend myself. THE COURT: You are defending yourself in pro per. THE DEFENDANT: I am not qualified to defend myself. You want to try me— THE COURT: Do you want to admit those priors or do you wish to deny them? THE DEFENDANT: I have nothing further to say. Without any additional time I cannot defend myself. I need counsel and I am trying to get it. I will get counsel today. I tried to use the telephone down in the Sheriff's Office and several times I failed to be able to use it. Whether they forgot it or what, I wasn't able to contact J. Allen Jones or Gordon Fleury, and I will contact them. I do need counsel. I can't fight this case. I'm not qualified. I haven't education enough to do so. So if the Judge will be kind enough to grant me time— THE COURT: No, I will not do so, because you have already had seven months to do it. You have had two attorneys, and you have had the Public Defender to appear for you twice during that same period of time. I am not going to give you any further continuance. THE DEFENDANT: I didn't appoint an attorney at no time. THE COURT: You hired an attorney. THE DEFENDANT: I did not hire no attorney. . . . THE COURT: Your request for a continuance is denied. . . . I am asking you about these four convictions of felonies, which are alleged in the complaint. Do you admit them or do you want to deny them? THE DEFENDANT: Let my last statement stand. THE COURT: In other words, you are not going to say anything? All right, the record will show they are deemed denied.''

Thereupon, after a recess, the jury panel was called into the courtroom and the following occurred: ''THE DEFENDANT: Judge, I—under all these threats of prior convictions and this and that, habitual criminal act, I've spoke to the District Attorney, and I would be willing to plead guilty to second degree robbery, because I have no money, I have no counsel . . . no chance to defend myself whatsoever. You will not grant me a continuance for trial, I mean, to subpoena my witness, which I have them within—now I'll show you the letters I have here, Judge, about my wife. I'm within two weeks of locating her. She's been seen in Stockton. May I show the District Attorney this? THE COURT: You want to withdraw your plea of not guilty and enter a plea of guilty? Is that my understanding? . . . THE DEFENDANT: This is May 8th [referring to letter] 'I went to Stockton. I seen Ray's wife Alberta down Stockton. She didn't have much to say.' THE COURT: . . . Is it my understanding you want to withdraw your plea . . .? THE DEFENDANT: Is it possible to withdraw my plea of not guilty at this time and give me three days to enter my other plea of guilty? THE COURT: No, we are going to do it right now. THE DEFENDANT: You won't give me a chance to get my witnesses up here or hire my attorneys to defend myself. THE COURT: We've already been over this.''

The court again reviewed the history of the proceedings and then said, ''Now . . . do you wish to withdraw your plea of not guilty and enter a plea of guilty to the charge of robbery second? THE DEFENDANT: Would you give me a chance to employ counsel? I'd like to get Gordon Fleury here. THE COURT: I will not give you any further continuance for the purpose of employing counsel or for the purpose of getting any witnesses. . . . Now, Mr. Ferry, are you going to withdraw this plea of not guilty and enter a plea of guilty? You can answer that yes or no.

for representation is immediate. It arises at least as early as the first formal criminal charge, which in this case was a complaint. Those having funds to employ private counsel generally have representation earlier than that. The record does not show what occurred in the preliminary proceedings before appellant was bound over to the superior court, though inferentially it appears that such preliminary proceedings occurred. At the first appearance in the superior court, the court properly granted appellant's request for representation by the public defender, even though at that time that officer raised the issue of indigency.

 Upon the facts presented here we hold appellant was entitled in the beginning to representation by the public defender as an indigent. " '. . . The standard applied is flexible, and contemplates consideration of such factors as amount of income, bank accounts, ownership of a home or car, outstanding debts, the number of dependents, and the seriousness of the charge.' " (*Williams* v. *Superior Court,* 226 Cal.App.2d 666, 672 [38 Cal.Rptr. 291], citing 13 Stanford L. Rev. 522, 545.) " 'The fact that an accused on bail has been able to continue employment following his arrest is not determinative of his ability to employ counsel, since few attorneys will accept a case on a credit basis, and generally a substantial cash payment is required. . . .' " (*Williams* v. *Superior Court, supra,* p. 672.) In the law review cited it is suggested that the test to be applied is whether or not a private attorney would be interested in representing a defendant in his present economic circumstances. The proposed test of eligibility for the New Jersey defender's system was stated as "the claimant does not have funds sufficient to interest a competent attorney. . . .' " (12 Rutgers L. Rev. 289, 325.)

 Here that appellant was indigent within the meaning of the statutes providing for public defender representation. is shown by what occurred when defendant attempted with the aid of the public defender to obtain counsel. Three attorneys discussed the matter with both defendant and the

THE DEFENDANT: Well, I'll have to, I guess. THE COURT: You are answering yes? . . . THE DEFENDANT: Okay. THE COURT: And the priors are to be dismissed then . . .? [Deputy District Attorney Mr. Dorfman]: That is correct."

The case was referred to the probation officer for report. Convened for sentencing, probation was denied, whereupon defendant asked leave to withdraw his plea, saying that he was forced to so plead by threats based on the habitual criminal act, that he was innocent of the "ridiculous charge of robbery." His request was denied and sentence was pronounced.

public defender and all of them quickly realized that defendant's property, consisting of the 40 acres of land under probate, was presently unavailable. Perhaps Mr. Heekin put the matter most succinctly, saying that he did not want to accept a note and mortgage on the land as security for fees he might earn because in view of defendant's eleven dependent children an attempt to enforce the security would be considered as overreaching on his part. Mr. DeCristoforo stated flatly there was no chance that he would represent defendant. And Mr. Snyder, quite reasonably, asked for a cash payment in advance. We think the situation was one of indigency within the meaning of the statutory standard and defendant was entitled to public defender representation from the beginning. Although the court never expressly ruled that defendant was or was not so entitled, it sufficiently appears from the entire record that in the court's view he was not. On several occasions, as we have seen, the court stated defendant had means to hire counsel and inferentially was not entitled to public defender representation; and the record further discloses that after his first request for such representation defendant made no further request. In addition to his right to public defender representation, resort could have been had to appointment of counsel at county expense. If the court was in doubt as to the obligation of the public defender, resort might have been had to this alternative means of providing counsel for defense. However, all the foregoing as to defendant's right to representation at public expense is critically affected by the fact that defendant did obtain counsel. Mr. Warren was retained by defendant and represented him for a considerable period of time. Defendant never questioned his competency, asking only that he withdraw from the cause because he and the defendant were not entirely in agreement as to the conduct of the case. And the way in which this occurred is illuminating. When Mr. Warren first appeared his retention had not been complete and he asked for further time to consider whether or not he would represent defendant. This was granted and thereafter he formally entered the case as counsel for defense. He thereupon obtained a continuance to prepare for trial and the trial date was set nearly six weeks in advance and on a date satisfactory to the defense. During that interim nothing appears to have occurred so far as court appearances are concerned, and we assume, as we think we must, that Mr. Warren was engaged in preparing the case for trial and further that when, on the trial date, he appeared with defendant

it was an appearance for trial after preparation made. Such preparation, of course, always involves such discovery proceedings as are deemed proper by defense counsel, consultations with the defendant, interviews with witnesses, preparation of trial briefs and of instructions to be requested, and the like. On the trial date. when defendant and his counsel appeared for trial, defendant then raised the question of his further representation by Mr. Warren. Addressing the court, Mr. Warren said, ''. . . Mr. Ferry has recently, just now in fact, conveyed to me the information that he perhaps wants to make a motion on his own in this regard. . . .'' Thereupon, defendant said: ''There seems to be a misunderstanding between Mr. Warren and myself, and I think it in the best interests of all concerned that he withdraw from the case at this time.'' We think we may safely assume that this position was, as stated by Mr. Warren, taken for the first time at that moment, for we may assume that if Mr. Warren, before appearing for trial with defendant, had been informed his services were to be dispensed with he would have informed the prosecution and the court and thus have given opportunity to avoid the useless waste of the court's time, the useless convening of a jury panel and the useless transportation of witnesses from distant points. It would have been his duty to do so.

It is worthy of note that this was not defendant's first ''brush'' with the law. He had suffered four prior convictions, was on parole, and it is to be supposed that he had some knowledge of court proceedings in criminal matters. About six months had elapsed, during which time he discussed his case with various attorneys, including the public defender, and these discussions must surely have involved some talk as to conduct of the defense and as to witnesses who might be summoned in his defense. His claim that he and his counsel were not in full accord as to the conduct of the case is not unusual. It happens frequently. But responsibility for deciding how a case shall be conducted is placed squarely upon the shoulders of counsel and properly so. It is his right and duty to control the trial. (*People* v. *Mattson,* 51 Cal.2d 777, 788 [336 P.2d 937].) In short, defendant made no showing justifying either that the court permit the withdrawal of counsel or that a continuance could properly be granted upon what appeared to be a pretense as to the obtaining of witnesses. Notwithstanding this (clearly at the request of defendant) and the expense and inconvenience to

which defendant's conduct had placed the court, the jury panel and prosecution witnesses and the prosecution itself, the court granted his request for the withdrawal of counsel, granted his request for a continuance for the purpose of obtaining new counsel and of obtaining witnesses, offered its aid through the issuance of subpoenas, and continued the trial date to a point more than a month in advance. At the same time, however, the court clearly informed the defendant that if he did not appear with counsel on that date he would be compelled to try his case himself and that no further continuances for any purpose would be permitted. Defendant made no protest to these conditions. And it does not appear that during the interim between the continuance and the new trial date defendant sought the aid of the court to obtain witnesses or to obtain counsel. Indeed, it does not appear that he made any considerable effort in either direction. Yet he came again to the court for trial without witnesses and without counsel.

We think the trial court was justified in the course it took, notwithstanding the constitutional right involved. We think it must be inferred from defendant's conduct that he did intelligently waive his right to counsel and his right to the aid of the court in summoning witnesses if, in fact, he knew of any that would help him. ▇ Conduct can constitute waiver. It could not be otherwise. And so it has been held. (*People* v. *O'Ward*, 168 Cal.App.2d 127, 131 [335 P.2d 762], and cases cited: *In re Jingles*, 27 Cal.2d 496, 499 [165 P.2d 12]; *People* v. *Gonzales*, 151 Cal.App.2d 112, 116 [311 P.2d 53].)

▇ It is the duty of a court to afford counsel to the indigent. But this duty ceases when counsel is retained by a defendant. The court must then keep hands off and permit counsel to control the case within the embrace of his right to do so. ▇ After defendant had retained Mr. Warren, who was willing to serve without compensation if need be, the issue of right to counsel dropped out of the case. It could rise again but in this case it did not. Notwithstanding defendant continued to assert his desire for and his need of counsel, his conduct belied his words. He had been told when the last continuance was granted that he must either get counsel or act for himself, that no further continuance would be granted, and that he would "have to move." Yet he came to trial again not only without counsel but, if he had in fact tried and failed, without appealing to the court for aid, or appointment of counsel, before his time elapsed. The court

was justified in concluding, as it did, that he simply was evading trial for reasons that seemed good to him, perhaps a hope that the prosecution would lose vital evidence. (See *People* v. *Ortiz,* 195 Cal.App.2d 112, 116 [15 Cal.Rptr. 398].) Certainly, it must be held that the court's conclusion finds ample support in the record and it should not now be disturbed.

The judgment is affirmed.

Pierce, P. J., and Regan, J., concurred.