[Sac. No. 7831. In Bank. Dec. 11, 1968.]

MARCUS INGRAM, Plaintiff and Respondent, v. THE JUSTICE COURT FOR THE LAKE VALLEY JUDICIAL DISTRICT OF EL DORADO COUNTY, Defendant and Appellant; THE PEOPLE, Real Party in Interest and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Jack R. Winkler, Deputy Attorney General, for Defendant and Appellant and for Real Party in Interest and Appellant.

Paul Ligda, Public Defender, for Plaintiff and Respondent.

John D. Nunes, Public Defender (Alameda), James R. Jenner, Assistant Public Defender, William R. Higham, Public Defender (Contra Costa), and Melvin W. Nitz, Public Defender (Fresno), as Amici Curiae on behalf of Plaintiff and Respondent.

MOSK, J.—On this appeal from a judgment ordering issuance of a writ of mandate, we are called upon to decide whether the trial court has the power to review the determina-

tion of a public defender that an accused who requests his services is "not financially able to employ counsel" (Gov. Code, § 27706, subd. (a)). We conclude that such a determination is not subject to judicial, as distinguished from political, review and that this rule is applicable although the public defender's services are sought for a collateral attack on a final judgment rather than a defense to a pending charge.

In 1959 Marcus Ingram (hereinafter called petitioner) appeared without counsel in the Justice Court of the Lake Valley Judical District, County of El Dorado, to answer to a misdemeanor charge of failing to provide for a minor child. (Pen. Code, § 270.) He pleaded guilty, was admitted to probation, and did not appeal.

On August 21, 1967, the Public Defender of El Dorado County, representing petitioner, filed a notice of motion in respondent justice court to set aside petitioner's 1959 judgment of conviction on the ground of an asserted denial of his right to counsel in that proceeding.

When the matter was called for hearing on September 14, 1967, the court on its own initiative asked the public defender for an affidavit of indigence to establish petitioner's financial inability to employ private counsel. The public defender replied that he had no such affidavit and was not required by law to have one; after some discussion, he nevertheless declared as an officer of the court that he was satisfied petitioner was indigent and hence eligible for the services of the public defender's office. The court ruled, however, that it had the power and duty to make a final determination of the issue of petitioner's indigence, and over the objection of the public defender continued the matter to allow preparation of evidence on the point.

Petitioner thereupon filed an application for writ of prohibition or mandate in the El Dorado Superior Court, alleging that "Unless restrained, respondent Court will proceed to rule on the Public Defender's right to represent me" and that such a ruling would be in excess of jurisdiction. On October 3, 1967, judgment was entered ordering that a peremptory writ of mandate issue to compel respondent court to "proceed to determine, on its merits, petitioner's motion to set aside the judgment of his conviction of a violation of Section 270 of the California Penal Code; and to permit the Public Defender of El Dorado County to represent petitioner in these proceedings without raising any question of the Pub-

lic Defender's right to do so or of petitioner's indigency."
The People, as real party in interest, appeal.

■ For half a century the office of public defender has
been a creature of statute.[1] The code provides that the salary
and expenses of the public defender are county charges (Gov.
Code, §§ 27708, 27709, 27711), and prescribes in detail the
powers and duties of the office. Government Code section
27706, subdivision (a), provides that *"Upon request of the
defendant or upon order of the court,* [the public defender]
shall defend, without expense to the defendant, any person
who is not financially able to employ counsel and who is
charged with the commission of any contempt or offense
triable in the superior, municipal or justice courts *at all
stages of the proceedings,* including the preliminary examina-
tion. The public defender shall, upon request, give counsel
and advice to such person about any charge against him upon
which the public defender is conducting the defense, and shall
prosecute all appeals to a higher court or courts of any person
who has been convicted, where, in his opinion, the appeal will
or might reasonably be expected to result in the reversal or
modification of the judgment of conviction." (Italics added.)
The remaining subdivisions of section 27706 are set forth in
the margin.[2]

Under the foregoing statutory scheme, "indigence is a quali-
fication required for such representation at public expense."

---

[1] The County and the City of Los Angeles established public defender
systems in 1913 and 1915 respectively, and in 1921 the Legislature
enacted a general enabling statute (Stats. 1921, ch. 245; now Gov. Code,
§§ 27700-27711). All public defender offices have since been established
pursuant to that legislation, together with charter provisions and ordi-
nances not inconsistent with the general law. (Note, *Representation of
Indigents in California* (1961) 13 Stan.L.Rev. 522, 529-532.) At the
present time such offices are operating in more than half the counties of
the state, including most of the metropolitan areas.

[2] "(b) *Upon request,* he shall prosecute actions for the collection of
wages and other demands of any person who is not financially able to
employ counsel, where the sum involved does not exceed one hundred
dollars ($100) and where, in the judgment of the public defender, the
claim urged is valid and enforceable in the courts.

"(c) *Upon request,* he shall defend any person who is not financially
able to employ counsel in any civil litigation in which, in the judgment
of the public defender, the person is being persecuted or unjustly
harassed.

"(d) *Upon order of the court,* he shall represent any person who is
not financially able to employ counsel in proceedings [relating to mentally
disordered sex offenders and mentally ill persons].

"(e) *Upon order of the court,* he shall represent any person who is
entitled to be represented by counsel but is not financially able to employ
counsel in proceedings [relating to juvenile offenders and minor wards]."
(Italics added.)

(*People* v. *Ferry* (1965) 237 Cal.App.2d 880, 886 [47 Cal. Rptr. 324].) The issue before us is, simply stated, in whom has the Legislature vested the power to determine whether a given defendant is in fact indigent?

▉ We begin our inquiry by carefully distinguishing between the two ways in which an indigent charged with crime may obtain the services of the public defender: one, by applying directly to the public defender himself, and the other by appearing unrepresented at arraignment and receiving a court-ordered appointment of counsel.

It is the latter sequence, doubtless the more common, with which the statutes and cases relied on by the People are concerned. ▉ Thus if a defendant makes his first appearance on a criminal charge without counsel, the court is mandated by provisions of the Penal Code to advise him of his rights and to inquire if he desires to be represented, and to make such an appointment if the defendant so desires but "is unable to employ counsel" (Pen. Code, §§ 859, 987). Construing the cited sections, the cases have made clear that in such event it is the power and duty of the trial court to inquire into the defendant's financial condition and determine whether he is eligible for the public defender's assistance. (See, e.g., *People* v. *Diaz* (1962) 206 Cal.App.2d 651, 661 [24 Cal.Rptr. 367].) This is the precise situation which we have said " 'should be handled by the judges who have charge of the courts where preliminary examinations and trials are held. Trial judges are in the best possible position administratively to decide the question involved, because the facts involved in each case must determine the answer.' " (*In re Smiley* (1967) 66 Cal.2d 606, 620 [58 Cal.Rptr. 579, 427 P.2d 179], quoting from *Williams* v. *Superior Court* (1964) 226 Cal.App.2d 666, 672 [38 Cal.Rptr. 291].) The People find solace in the foregoing language, but overlook the fact that the distinction we there drew was between trial courts and appellate courts, not between trial courts and the public defender.[3] Nothing in *Smiley* should be taken as implying that the public defender is not as "administra-

[3]Thus in the immediately preceding paragraph of *Smiley* (66 Cal.2d at p. 620) we explained, "it remains impractical for *an appellate court* to prescribe a specific maximum amount of net liquid assets a defendant will be allowed to possess and still claim indigency for the purpose of court appointment of counsel, for the cost of legal representation will vary according to the standards of the community, the complexity of the case, and the expenses necessary for defense." (Italics added.) The public defender, by contrast, is fully capable of appraising such factors.

tively'' well equipped as the trial courts to determine this preliminary question of fact.

██ Indeed, the People concede that the public defender has the power and duty to make this determination in the alternate situation here envisaged, i.e., when the person charged with crime comes directly to him for assistance rather than awaiting his first court appearance. This authority is implicit in the command of subdivision (a) of section 27706 that ''Upon request of the defendant'' the public defender shall represent any indigent accused ''at all stages of the proceedings.'' The period prior to arraignment must be deemed such a ''stage''; as recent decisions have recognized, it is a period in which the right to counsel is often of critical importance. (See, e.g., *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951].) Such an accused has not yet been brought before a judicial officer, and it therefore devolves by necessity upon the public defender to initiate the inquiry into his financial status and decide whether he qualifies for representation. If the decision is favorable to the applicant, an attorney-client relationship may be established without more ado.[4]

We next consider whether a public defender's determination that a person applying for his services is ''not financially able to employ counsel'' is subject to review by the trial court. Considerations both of statutory construction and of policy require a negative answer to this question.

Turning first to the statute, we observe that subdivision (a) of section 27706 directs the public defender to represent indigent persons either ''Upon request of the defendant *or* upon order of the court'' (italics added). But if a defendant's successful request for assistance can be nullified by a court because it disagrees with the public defender on the question

---

[4] ''The need for representation is immediate. It arises at least as early as the first formal criminal charge. . . . Those having funds to employ private counsel generally have representation earlier than that.'' (*People* v. *Ferry* (1965) *supra*, 237 Cal.App.2d 880, 886-887.) The fact that the public defender's office can enter a case as soon as the prearrignment period is one of its major advantages over the ''assigned counsel'' system, which ordinarily must await a formal court order before becoming operative in any given instance. (See generally Searle, *An Argument for the Public Defender System* (1964) 5 Santa Clara Law. 48, 51-54.)

of indigence, that officer can act in effect only "upon order of the court." To so hold, of course, would be to read the "request" alternative wholly out of the statute.

That the disjunctive form of subdivision (a) was deliberately chosen by the Legislature, moreover, is demonstrated by comparing the language of subdivisions (b) through (d) of the same statute. (*Ante*, fn. 2.) In subdivisions (b) and (c) it is provided that the public defender shall prosecute and defend certain civil actions only "Upon request" of the indigent applicant; the statute gives the court no authority to order the public defender to act on behalf of such applicants, and hence his determination of their indigence is final. On the other hand, in subdivisions (d) and (e) it is provided that the public defender shall represent indigent persons involved in mental health or juvenile proceedings only "Upon order of the court"; the statute gives the public defender no power to enter such cases at the request of the persons affected, and thus no power to determine their indigence in any event.

■ It is a cardinal rule of construction that the several parts of a statute must be read together and harmonized, when reasonably possible, so as to discover and give effect to the intent of the Legislature. (*In re Bandmann* (1958) 51 Cal.2d 388, 393 [333 P.2d 339], and cases cited.) ■ Viewing section 27706 in its entirety, we hold that subdivision (a), in deliberate contrast to subdivisions (b) and (c) on the one hand and subdivisions (d) and (e) on the other, was intended to empower *either* the public defender *or* the court to make an affirmative determination that a defendant applying for counsel is indigent; and that in order to give effect to such intent, the statute must be further construed to deny to each the power to nullify the conclusion of the other.

The People urge that in the converse situation—i.e., when either the public defender or the court determines that the defendant is *not* indigent and hence is not eligible for representation at public expense—the decision is subject to judicial review. This is true: if the public defender erroneously finds nonindigence, the defendant can invoke the alternate provision of subdivision (a) and obtain a court appointment of counsel at the arraignment; and if the court erroneously finds nonindigence, the defendant can petition a higher court and obtain a writ of mandate ordering such appointment to be made (e.g., *Williams* v. *Superior Court* (1964) *supra*, 226 Cal.App.2d 666). Yet this very distinction illustrates the broader policy considerations that are also at issue here. The

defendant is entitled to judicial review of a determination of *non*indigence not because of any language in section 27706 but because of the fundamental constitutional guarantee of counsel to all persons accused of crime. (U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 13; *In re Johnson* (1965) 62 Cal.2d 325, 329 [42 Cal.Rptr. 228, 398 P.2d 420], and cases cited.) The courts, more than any other agency of government, are charged with the duty of implementing that guarantee. Thus when a defendant makes his first appearance without counsel, the court must determine whether he does so from free and informed choice or because of indigence; if the latter is the reason, the court must appoint counsel to represent him.

But when a defendant appears *with* counsel, the court's duty in this regard is discharged.  ██  "It is the duty of a court to afford counsel to the indigent. But this duty ceases when counsel is retained by a defendant. The court must then keep hands off and permit counsel to control the case within the embrace of his right to do so." (*People* v. *Ferry* (1965) *supra*, 237 Cal.App.2d 880, 890.)  We recently held that a court has no power to remove a defense attorney, over the objections of both the defendant and that attorney, upon a finding that the latter is "incompetent" because of purported ignorance of the law to try the particular case. (*Smith* v. *Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65].)  ██  *A fortiori,* a court cannot remove an attorney on the far less relevant ground of the nature of the financial arrangement between him and his client. To do so would, as in *Smith,* infringe upon the defendant's right to counsel of his choice and compromise the independence of the bar. When a defendant appears with retained counsel, it is clear the court has no power to inquire into the defendant's personal financial condition, to determine that he is unable to pay his chosen attorney an "adequate" fee, and to order that he be represented instead by court-appointed counsel or the public defender;[5] when a defendant appears with a public defender who is satisfied from his own inquiry that his client is eligible for his services, such judicial interference with their relation-

---

[5] Quickly distinguishable are two early cases cited by the People: in *Clark* v. *Willett* (1868) 35 Cal. 534, 539-540, the client himself denied the authority of his purported attorney to act on his behalf; and in *People* v. *Mariposa Co.* (1870) 39 Cal. 683, 685, we recognized that in certain limited situations, as suggested by dictum in *Clark,* the court may require an attorney to show his authority at the instance of the opposing party "when justice requires it." Neither case, of course, involved the attorney-client relationship in the setting of a criminal prosecution.

ship would be no less intolerable. As we explained in *Smith,* "the relationship is independent of the source of compensation, for an attorney's responsibility is to the person he has undertaken to represent rather than to the individual or agency which pays for the service. [Citation.] ▮ It follows that once counsel is appointed [or undertakes] to represent an indigent defendant, whether it be the public defender or a volunteer private attorney, the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained. To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused." (Fn. omitted.) (*Id.* at p. 582.)

The inviolability of this relationship is illustrated by yet another contention of the People. As we observed earlier, a defendant whom the court has erroneously found to be nonindigent can obtain relief from a higher court. In the alternative, however, if he can demonstrate to the satisfaction of the public defender that he is "not financially able to employ counsel" he may apply to that officer for representation despite the court's finding of nonindigence. In undertaking such a defense the public defender does not, as the People contend, "review and reverse" the court's determination. Rather, he exercises an original power vested in him by statute, not superior to but coequal with the power of the court. Nor is precedent lacking: for example, the general statutory directive authorizing the district attorney to allege in the information either the offense named in the order of commitment "or any offense or offenses shown by the evidence taken before the magistrate" (Pen. Code, § 739) has long been construed to empower that officer to charge, in his discretion, a related offense "although the magistrate concluded impliedly or otherwise that the evidence did not show probable cause that such offense had been committed." (*Parks* v. *Superior Court* (1952) 38 Cal.2d 609, 613-614 [241 P.2d 521]; see also *People* v. *Bird* (1931) 212 Cal. 632 [300 P. 23] [commitment for manslaughter, charge of murder]; *People* v. *Warren* (1958) 163 Cal.App.2d 136, 141 [328 P.2d 858]; *People* v. *Dean* (1958) 158 Cal.App.2d 572, 575 [322 P.2d 929].) In this respect, the public defender is endowed with no less discretion and independence in the performance of his duties than is the district attorney.

▮ Although we hold there is no *judicial* review of a public defender's determination that a given defendant is

indigent, his conduct in this regard is, of course, subject to appropriate review through the *political* process. The overwhelming majority of public defender offices in this state are appointive, and Government Code section 27703 declares that in such event the public defender "shall be appointed by the board of supervisors *to serve at its will.*" (Italics added.) If a holder of that office abuses his powers by consistently undertaking to represent at county expense persons who are not in fact indigent, the board of supervisors may take such remedial steps as are deemed necessary, including his reprimand, suspension or discharge, or the institution of appropriate court action.[6] There is, moreover, clear legislative expression of the view that political and administrative remedies are adequate in this context. In 1959 a measure was introduced (A.B. 1852) which would have required that public defenders obtain from all applicants a financial statement and affidavit representing "to the court" that they have no funds to employ counsel—i.e., the precise document demanded by respondent court in the case at bar. The bill was referred to the Assembly Interim Committee on Criminal Procedure, which successfully recommended against enactment on the ground that it was "of the opinion that the nature and extent of this problem do not require legislative action. It appears that public defenders make a real effort to avoid taking cases which do not qualify for their services. If abuses develop in individual cities or counties of the state, it appears to us that the proper avenue of appeal is to the judicial council or the county board of supervisors." (22 Assembly Interim Com. Report No. 1 (1959-1961) p. 99.)

In short, the fundamental flaw in the People's position is its unstated assumption that the courts are the guardians of the county coffers. In our system of government this is not, and should not be, their role. The Constitution and the statutes commit that responsibility, more appropriately, to the board of supervisors, assisted by such officers as the district attorney, the county counsel, the treasurer, the controller and auditor, and the inquisitorial body of citizens, the grand jury.

Finally, we consider whether a different conclusion is required here by reason of the fact that petitioner has not

---

[6]In counties in which the public defender is elected rather than appointed, the boards of supervisors retains certain budgetary controls and the incumbent of that office must stand for reelection every four years (Gov. Code, § 27704) and in the meanwhile is subject to recall (Elec. Code, § 27201).

applied to the public defender for a "defense" to a pending charge but rather for assistance in presenting a motion to set aside his prior judgment of conviction, i.e., a petition for writ of error *coram nobis*. The statute, as we have seen, directs the public defender to represent indigents "charged with the commission of any . . . offense"; but it also directs him to do so "at all stages of the proceedings," and in particular to prosecute on behalf of such persons "all appeals to a higher court . . . where, in his opinion, the appeal will or might reasonably be expected to result in the reversal or modification of the judgment of conviction." It is too late for the People to urge a narrow construction which would exclude recognized forms of collateral relief from the scope of this language. In *People* v. *Shipman* (1965) 62 Cal.2d 226, 231 [42 Cal.Rptr. 1, 397 P.2d 993], we observed that "Whatever the label, . . . *coram nobis* 'must be regarded as part of the proceedings in the criminal case . . .' [citation] and it is an established remedy for challenging a criminal conviction. [Citations.]" The intent of the Legislature in specifically authorizing the public defender to prosecute an appeal was to insure his continued representation whenever he reasonably believed that the judgment of conviction was defective and hence subject to "reversal or modification." The state has no recognizable interest in saving a faulty judgment merely because the person convicted is too poor to hire counsel to attack it. (Cf. *Douglas* v. *California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814].) And we also observed in *Shipman* that "the questions that may be raised on *coram nobis* are as crucial as those that may be raised on direct appeal" (62 Cal.2d at p. 231). ▇▇▇ Accordingly, if the public defender reasonably believes that a judgment, although final, is so defective as to be subject to a successful collateral attack, whether by *coram nobis* or habeas corpus, it does no violence to the statute to allow him to represent such an indigent at the latter's request.[7]

▇▇▇ The fact that a *coram nobis* petitioner may be represented by counsel, however, does not affect the operation of the remaining rules laid down in *Shipman*: regardless of such representation, the petition may be summarily denied if its lack of merit appears from the face of the document or the

---

[7]Indeed, a contrary construction would even deny the possibility of an indigent *coram nobis* petitioner's being represented by the public defender "upon order of the court," in direct contradiction to our holding in *Shipman*.

court's own records; and although the court must set the matter for a hearing if there are substantial legal or factual issues presented, such a hearing may either be a normal motion proceeding determined on the basis of written points and authorities, or a more formal adjudication with the petitioner and witnesses present and testifying. (*People* v. *Shipman* (1965) *supra*, 62 Cal.2d 226, 230-231.) Nothing we say here is meant to require respondent court, in hereafter ruling on the merits of petitioner's motion to set aside the judgment, to adopt any one of these procedures over another. Nor do we so construe the writ of mandate issued by the superior court, which simply orders respondent court to "determine" the merits of the motion without regard to petitioner's eligibility for the services of the public defender.[8]

We do not reach the People's contention that the public defender was not authorized to appear for petitioner until a formal substitution of attorneys was filed with the clerk and served on the district attorney. (Code Civ. Proc., §§ 284, 285.) Whatever its merits, the point was not raised at the trial level where any oversight in this regard could easily have been corrected. It will therefore be deemed to have been waived.

The judgment is affirmed. Inasmuch as the underlying proceeding is criminal in nature, neither side shall recover costs on this appeal.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

[8]In the particular case before us, however, we note that when this motion was first presented respondent court set the matter for a hearing in which counsel were to participate. It would appear advisable to follow that procedure upon remand.