WONG, J.
I dissent.
A myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. (Chandler v. Fretag (1954) 348 U.S. 3 [99 L.Ed. 4, 75 S.Ct. 1]; People v. Crovedi (1966) 65 Cal.2d 199, 207 [53 Cal.Rptr. 284, 417 P.2d 868].)
In Crovedi our California Supreme Court made the following comment with respect to the Chandler case: “The import of this decision is clear: the right to employ one’s own counsel is based on a value additional to that insuring reliability of the guilt-determining process. Here we are concerned not only with the state’s duty to insure ‘fairness’ in the trial, but also with the state’s duty to refrain from unreasonable interference with the individual’s desire to defend himself in whatever manner he deems best, using every legitimate resource at his command.” (People v. Crovedi, supra, 65 Cal.2d 199, 206.)
In the present case appellants on March 24, 1970, no longer wished to be represented by attorney Oscar Acosta for good and sufficient reasons which will be more fully discussed below. Appellants expressed a desire *Supp. 16 to be represented by the public defender, who was willing to represent appellants providing he had sufficient time to prepare for trial. The refusal of the trial court to grant a continuance to permit the public defender to prepare for trial can only be characterized as an unreasonable interference with appellants’ right to choose their own counsel.[1] Such denial, in my opinion, was an abuse of discretion and deprived the appellants of due process of law. Any suggestion that the motion for a continuance, made on March 24, 1971, was a dilatory tactic is not supported by the record.
The Motion for Continuance Was Not a Dilatory Tactic
The criminal complaints relating to the demonstrations which occurred at the St. Basil’s Catholic Church on Christmas Eve, 1969, were filed on January 19, 1970. At the arraignment on January 21, 1970, Oscar Acosta represented all five defendants in the present case and five other defendants in People v. Chavez*(M.C. 352415, Cr. A 9814.) Both cases related to the same demonstration. On February 18, 1970, Mr. Acosta moved on behalf of all 10 defendants to consolidate the 2 cases for trial. The court continued the motion to consolidate to February 20, 1970, but set the Chavez case for trial on February 24, 1970, and the appellants’ case for trial on February 26, 1970. This was the first trial setting for either case.
On February 20', 1970, the court for reasons not disclosed in the record, denied appellants’ motion to have their case consolidated for trial with the Chavez case. The record does not disclose whether or not the People opposed the motion to consolidate.
On February 24, 1970, the first assigned trial date, the Chavez case was assigned by the master calendar judge to division 18 where the case proceeded to trial with Mr. Acosta representing three of the five defendants therein. Two days later appellants’ case was also assigned to division 18 to trail the Chavez case until Mr. Acosta completed the first trial. Thus, appellants, because of the denial of their motion to be tried along with the defendants in the Chavez case, were required to trail in division 18 for approximately one month until the Chavez case was submitted to the jury on March 23, 1970. The following day appellants made those important motions (1) to substitute the public defender for Mr. Acosta, and (2) to continue the case to- permit the public defender to prepare for trial.
*Supp. 17 In opposing the motion for a continuance the prosecutor pointed out that “the matter now is over 90 days old.” This statement was grossly unfair since of the 90 days to which the prosecutor referred, 25 days had passed because the People had not even filed a complaint until January 19, 1971, and an additional 28 days had passed while appellants’ case was required to trail in division 18. The first delay was chargeable to the prosecution alone; the second delay was chargeable to the trial court for failing to grant appellants’ motion to be tried along with the defendants in the Chavez case. The record before us does not disclose that appellants made any motion for a continuance prior to March 24, 1970, and does not, and cannot, support any inference that the motion for a continuance on March 24, 1970, was a dilatory tactic.[2]
The Power of a Trial Court to Grant or Deny a Continuance While Discretionary Is Not Absolute
The rule that should be applied in this case has been succinctly stated as follows:
“There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.” (Ungar v. Sarafite (1964) 376 U.S. 575, 589 [11 L.Ed.2d 921, 931, 84 S.Ct. 841]; People v. Byoune (1966) 65 Cal.2d 345 [54 Cal.Rptr. 749, 420 P.2d 221],)
“California decisions in this area reflect a determination that respect for the dignity of the individual shall be maintained within the context of enforcing the criminal law, and that a reasonable accommodation of seemingly conflicting values shall thereby be achieved.” (People v. Crovedi (1966) 65 Cal.2d 199, 206, 207 [53 Cal.Rptr. 284, 417 P.2d 868].)
*Supp. 18 Circumstances Indicating That the Motions Should Have Been Granted
(1) Oscar Acosta Was Not Only an Eyewitness to the Demonstration in Question, but Also a Participant.
It is undisputed that Oscar Acosta was present at St. Basil’s Church on Christmas Eve before, during, and after the demonstrations which resulted in the criminal charges against appellants. He was with the group marching around the church and was seen in the vestibule area of the church. Even one of the prosecution witnesses, Officer Armando Miranda, had difficulty in separating Mr. Acosta’s role as participant and as counsel.[3] Another prosecution witness, Officer Richard Dominguez, testified that while he had never met Mr. Acosta before the St. Basil’s Church incident, he did know that Mr. Acosta was associated with the Chicano Movement. It was because of Mr. Acosta’s past activities and his prestige that Officer Dominguez approached him to inquire if he was in charge of the demonstration. Mr. Acosta replied that he was not. During the evening, however, he was seen conversing with a number of the demonstrators.
(2) Acosta’s Participation in the Demonstration Diminished His Effectiveness as Defense Counsél.
The bitter lessons learned from the trial of the Chavez case made it abundantly clear to Acosta and appellants that he could not effectively act as defense counsel in the present case. The motion to be relieved of counsel was made the very day following the submission of the Chavez case to the jury.
At that hearing Mr. Acosta made the following statement to the court regarding the Chavez trial: “I believe that I listed myself as a potential witness in my opening statement. I made the decision not to testify because I did not want to personally become an issue in the case. There was continual reference made as being present at the scene of the event and for that reason I did not take the stand. I did not wish to project my personality into the case; nevertheless, it was made an issue.
*Supp. 19 “I suspect that this will happen at the second trial
Appellants were faced with serious charges which had not only political, but religious, overtones. The criminal charges brought against them resulted from a demonstration in which they were challenging the “establishment,” religious as well as political. It is little wonder that appellants did not wish to be saddled with the additional burden of being represented by a co-participant in the demonstrations. While they may have been willing to accept Mr. Acosta as trial counsel before the Chavez trial, they were not foolhardy enough to wish to continue with him after the Chavez trial.[4] Thus, it was not surprising that appellants would wish to rid themselves of Mr. Acosta, who had proved to be a liability in the Chavez case and to engage the impartial and effective public defender. The public defender notified the court that appellants qualified for representation by his office, but requested a 60-day continuance in order to prepare for trial. The court concluded that the public defender’s request for a two-month continuance was unreasonable, and denied the motion.
f 3) The Trial Court Was Not Required to Accept the Public Defender's Estimate for Time Needed to Prepare for Trial.
Considering the complexities of this case, the large number of defendants and witnesses, and the heavy caseload of the public defender’s office, it is arguable whether or not a 60-day continuance would be necessary. If the trial court was firmly of the belief that the 60-day request was unreasonable, it should have granted the motion to substitute, but shorten the period of continuance for preparation for trial. The alternative was to force appellants to trial with a counsel they did not want and who had already proven to be ineffective.
Moreover, both the trial court and the deputy public defender failed to recognize the duty of the public defender to represent indigent defendants charged with crimes. Section 27706 of the Government Code provides that the public defender, upon request of the defendant or upon order of the court shall defend, without expense to the defendant, any person who is not financially able to employ counsel. Thus, the public defender having ascertained that appellants herein were indigent, had the duty to represent *Supp. 20 them. (See Ligda v. Superior Court (1970) 5 Cal.App.3d 811, 825-826 [85 Cal.Rptr. 744]; Ingram v. Justice Court (1968) 69 Cal.2d 832, 836 [73 Cal.Rptr. 410, 447 P.2d 650].) The deputy public defender could, not, as he did in this case, place conditions upon his representation of qualified indigents or resist appointment unless he has sufficient time in which to prepare for trial. If the court refused to allow the public defender sufficient time to prepare for trial, he had available remedies to challenge the correctness of the judge’s ruling by extraordinary writs.
(4) Compelling Acosta to Continue as Defense Counsel Made Him Unavailable as an Effective Defense Witness.
As earlier discussed, the participation of Acosta in the St. Basil’s Church demonstration diminished his effectiveness as defense counsel to the prejudice of appellants. The prejudice was compounded when the court refused the motion to pennit Acosta to withdraw, thus making him unavailable as an effective defense witness.
The roles of witness and counsel are so incompatible that when one undertakes to be both, he can be effective in neither. (See 6 Wigmore on Evidence, § 1911, pp. 595-606.) Moreover, the Code of Professional Responsibility requires that an attorney withdraw from a case when “it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client . . . .” (ABA Code of Professional Responsibility, DR 5-102 [A], cited in 46 L.A. Bar Bull. (Sept. 1971) 464, at p. 465.)
This Mr. Acosta attempted to do when he addressed the court as follows:
“Mr. Acosta: The motion to substitute myself out is on several grounds.
“The Court: I will hear your motion.
“Mr. Acosta: The first ground being that I am going to have to personally testify in both of the cases. It developed during the course of the companion case [the Chavez case] that I am going to be required to testify. It is a very crucial point in the evidence.
“The Court: When did you determine that this would be necessary?
“Mr.' Acosta: When Sergeant Dominguez was a witness for the prosecution in the companion case. He denied having certain conversations with me personally at the scene of the crime.
“The Court: How many days ago was this?
“Mr. Acosta: I guess about a week ago.” (Italics added.)
*Supp. 21 It should be noted that the reference to Sergeant Dominguez was in regard to “when” Acosta first determined that it would be necessary to offer defense testimony. At no- time did Acosta inform the court that his testimony would be limited to the conversation with Sergeant Dominguez. It would be difficult, if not impossible, to anticipate which of the numerous witnesses the prosecution would use on the second trial, and how or in what manner their testimony would have to be impeached. The defense is not required to determine whom to call or what to offer by way of defense until the prosecution has presented its case. In my opinion, Mr. Acosta adequately apprised the court of the reasons why his clients no longer wanted him as defense counsel, and in the absence of compelling necessity to proceed to trial without delay, the motion for substitution of counsel should have been granted. I am of the opinion that there was no such “compelling necessity.”
There Was No Compelling Necessity to Justify the Denial of the Continuance Thus Requiring Appellants to Proceed to Trial With Unwanted Counsel
In opposition to appellants’ motions the prosecutor stated:
“Mr. Reidder: The People have approximately eighteen witnesses, and the greater number of these witnesses are involved in law enforcement, and the majority of these witnesses have military obligations or vacations scheduled beginning in the month of April, running through May, June and July, which is a heavy month. This would pose an unreasonable hardship on the People." (Italics added.)
The trial court accepted this vague statement of the prosecutor without trying to ascertain whether all 18 witnesses were necessary, whether there could not be some accommodation made by shifting vacation schedules of police officers, whether by use of a transcript of the testimony from the Chavez case some witnesses could be eliminated, or whether one month would be better than another for all witnesses. It should have been obvious to the trial court that with such a large number of witnesses any month of the year might cause inconvenience to some witnesses. As it turned out those witnesses scheduled for April vacations had to make some adjustments since the trial commenced April 6, 1970 and ended May 8, 1970.
In People v. Crovedi (1966) 65 Cal.2d 199, 209 [53 Cal.Rptr. 284, 417 P.2d 868] the Supreme Court in commenting on the trial court’s unjustifiable concern over the convenience of out-of-state prosecution witnesses stated as follows: “All of the facts were before the court, or were readily available to it through consultation with the prosecutor, when it *Supp. 22 ruled upon the motion for continuance and/ or mistrial prior to the resumption of the trial. We do not demand prescience of trial courts faced with decisions involving the right of representation of counsel — but we must require of them a resourceful diligence directed toward the protection of that right to the fullest extent consistent with effective judicial administration.”
It is submitted that the trial judge not only failed to use “resourceful diligence,” but failed to make any inquiry whatsoever as to whether vacation schedules might be adjusted. For all we know, the case might have been tried during the months of May or June with no more inconvenience to witnesses than occurred during the month of April. We have in this case a classic example of what the California Supreme Court meant when it said: “[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.” (People v. Crovedi (1966) 65 Cal.2d 199, 207 [53 Cal.Rptr. 284, 417 P.2d 868].)
Conclusion
I am of the opinion that appellants Richard Cruz, Richard Martinez, and Anthony Salazar were denied due process of law when they were compelled to go to trial with a defense counsel whom they justifiably did not want and when they were denied the services of the public defender. Moreover, there was no public purpose to be served in denying the motion for continuance to permit the public defender to prepare for trial. In being compelled to proceed to trial with Oscar Acosta, appellants not only were saddled with an attorney with distinct liabilities because of his participation in the St. Basil’s Church demonstration, but for all practical purposes were denied the use of Mr. Acosta as a defense witness.
While appellant Alicia Escalante was not represented by Oscar Acosta, she did make timely objection to being required to go to trial with codefendants represented by Mr. Acosta. At the March 24, 1970, hearing the following statement was made on behalf of appellant Escalante: “Mr. Dell: On behalf of Mr. Rosen, I believe I have already made a motion for a continuance, which I will now renew in these consolidated cases. I would say on behalf of the Escalante and the Andara case, represented by Mr. Rosen, based upon statements made by Mr. Acosta today, we feel that those two defendants’ opportunity to present their case would be seriously prejudiced through having Mr. Acosta representing the other eight defendants in the same courtroom, based upon the representations made as to relationship between himself and his clients, based on his physical and mental condition, we do not feel that our two defendants would have an *Supp. 23 opportunity to have a fair trial, if they are brought to trial today within that consolidated case.” (Italics added.)
Because of the close relationship among all appellants, it was inevitable that the prejudice to appellants Cruz, Martinez, and Salazar in being saddled with an attorney so closely identified with the St. Basil’s Church demonstration and the Chicano Movement would spill over and affect the fairness of trial as it pertained to appellant Escalante. Their burdens became her burdens; their liabilities became her liabilities. She, too, was denied a fair trial.
In the present case the master calendar judge was more concerned with the possible additional inconvenience to one or more of the People’s witnesses, the nature and extent of which was unknown to him, rather than securing for the appellants a fair trial represented by an impartial and competent public defender. Instead, the judge, in denying the motion for a continuance merely for the sake of expediency, compelled all appellants to go to trial burdened with an unwanted defense attorney who had already proven to be a liability during the trial of the companion case, People v. Chavez, supra (Cr. A. 9814).
I would reverse the convictions of all appellants and remand their causes for retrial under more acceptable circumstances. (See People v. Chambers (1964) 231 Cal.App.2d 23, 34 [41 Cal.Rptr. 551].)

With respect to the capabilities of the Public Defender of Los Angeles County, the Supreme Court has stated: “This Court can take judicial notice, too, that it would be difficult to find in California any lawyers more experienced or better qualified in defending criminal cases than the Public Defender of Los Angeles County and his staff.” (People v. Adamson (1949) 34 Cal.2d 320, 333 [210 P.2d 13].)

This case was not certified for publication.

While any delays that occurred following March 24, 1970, are immaterial on the issue of whether the trial judge abused his discretion in denying the motions in question on March 24, 1970, it should be noted that part of the subsequent delays can be directly attributable to the fact that the prosecutor (Mr. McConnell) on March 25, 1970, informed the trial judge that Mr. Acosta’s license with the State Bar had been suspended since December 18, 1969. The court thereupon cited Mr. Acosta for, contempt of court, advised him of his constitutional rights, and set the contempt proceeding for a hearing on March 26, 1971. Thus, the embattled Mr. Acosta between the time he was representing three of the defendants in the lengthy Chavez case and conducting the defense of four of the five appellants herein, was forced to defend himself in a contempt of court proceeding.

During the second week of trial the following testimony was presented to the jury:
“Q. Officer Miranda, did you see any of the defendants here in court today at St. Basil’s Catholic Church on December 25th?
“A. Yes, I did.
“Q. Who did you see?
“A. I saw Mr. Acosta.
“Q. You saw Mr. Acosta?
“A. You said defendants?
“The Court: The record will show Mr. Acosta is not a defendant."

That appellants no longer wanted Acosta was verified by the deputy public defender, Mr. Levy, who stated:
“Mr. Levy: My name is Levy and I have been contacted by a number of the defendants who said that they did not want Oscar Acosta to represent them and they asked me if I could try to find counsel for them. For the last five days, I have contacted about eight different attorneys, and the only attorney that gave me any kind of a commitment wanted a considerable amount of money and said that he would not be available because of the matters that he had pending in the Supreme Court in the last week in April.”